SAMUEL CULVERSON, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 19866

August 21, 1990                              797 P.2d 238

*Morgan D. Harris,* Public Defender and *Robert L. Miller,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex A. Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, YOUNG, C. J.:

Samuel Culverson was convicted by a jury of first degree murder and sentenced to two terms of life imprisonment without

possibility of parole for killing Michael Smith. We hold that the district court erred in instructing the jury that a defendant may not use self-defense to justify a homicide unless he is in actual danger of being killed or seriously injured by his assailant; and that the district court also erred in instructing the jury that a defendant has a duty to retreat when he reasonably believes that he is about to be attacked or killed. We reverse Culverson's judgment of conviction.

## FACTS

On March 27, 1988, Hollie Broadus (Broadus) and Michael Smith (Smith) agreed to pool their money to buy cocaine. Broadus went out alone to find a seller. Samuel Culverson (Culverson) drove up to Broadus and offered him a ride. Culverson had a passenger with him in the car named Joel Thomas (Thomas). Broadus, Culverson, and Thomas drove to the home of Smith. Broadus talked with Smith and then both men entered Culverson's car. At this point the testimony is conflicting.

Broadus testified that Culverson was the initial aggressor. He claimed that Culverson pulled out a gun, pointed it at Smith and said "give me all of your . . . money." Smith said "I ain't giving you . . . man" and Broadus pushed Smith out of the car and jumped out himself. As Broadus ran from the scene he saw Smith pointing a gun at Culverson and heard four shots.

Thomas testified that Smith was the initial aggressor. He claimed that when they arrived at Smith's house, Smith and Broadus asked Culverson for a ride somewhere. Culverson said he would need money before he took them anywhere. Smith took out a roll of bills and began to count them. Broadus grabbed Smith's money and stuck it in his mouth. Culverson became angry at Broadus for being "disrespectful" and stated that he was going to take the money back from him. He then told Thomas to let Smith out of the car. Smith got out of the car, pulled a gun out of his pants, and called someone a "s-o-b." Thomas ran. He heard one shot, ran further, and then heard four more shots.

Culverson testified that he shot Smith in self-defense when Smith pointed a gun at him. He further testified that he did not attempt to rob Smith.

Smith died from four bullet wounds from Culverson's gun. The police found a pellet gun next to Smith's body. Culverson was tried and found guilty of first degree murder with the use of a deadly weapon. He was sentenced to two consecutive terms of life imprisonment without possibility of parole.

## LEGAL DISCUSSION

### I. ACTUAL AND APPARENT DANGER IN RELATION TO A CLAIM OF SELF-DEFENSE.

Culverson contends that the court erred when it failed to give the jury an instruction he submitted regarding the relationship between self-defense, actual danger, and perceived danger. At his trial Culverson submitted the following jury instruction to the court:

> Actual danger is not necessary to justify self-defense. If one is confronted by the appearance of danger which arouses in his mind, as a reasonable person, an honest conviction and fear that he is about to suffer great bodily injury, and if a reasonable man in a like situation, seeing and knowing the same facts, would be justified in believing himself in like danger, and if the person so confronted acts in self-defense upon such appearances and from such fear and honest convictions, his right of self-defense is the same whether such danger is real or merely apparent.

The court refused to give this instruction.

Culverson contends that the instructions given by the court regarding self-defense were misleading. He particularly objects to a part of Instruction 17 which states:

> Homicide is also justifiable when committed either in the lawful defense of the slayer, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer *and there is imminent danger of such design being accomplished* or in the actual resistance of an attempt to commit a felony upon the slayer in his presence.

(Emphasis added.)

Instruction 17 appears to state that homicide is justifiable when a person reasonably believes that he is about to be seriously injured or killed and there is an *actual* and *immediate* danger that he will be killed. While homicide would be justifiable under these circumstances, it would also be justifiable if there was no actual or immediate danger to the defendant, but the defendant *reasonably believed* that his assailant could kill or seriously harm him.[1] *See* People v. Davis, 408 P.2d 129 (Cal. 1965).

[1]For instance, a defendant who is approached by a person who points an unloaded shotgun at him may reasonably believe that he is in danger of being attacked if he believes the gun is loaded. Under Instruction 17, such a person might not be justified in using self-defense because he was in no actual or immediate danger of being killed or seriously injured.

We note that Instruction 17 states that homicide is *also* justified under the situation mentioned in the instruction. The use of the word "also" implies that Instruction 17 is but one example of when self-defense justifies a homicide. Other instructions given to the jury do not require that the defendant be in actual danger before he uses self-defense as a justification for homicide. A careful reading of all the instructions could have led a juror to conclude that a person may use self-defense as a justification to homicide even if he is not in actual danger.

A juror should not be expected to be a legal expert. Jury instructions should be clear and unambiguous. Instruction 17 may have misled the jury into concluding that Culverson was not justified in shooting Smith because Smith carried a pellet gun which could not have seriously harmed Culverson. Accordingly, we conclude that Jury Instruction 17 was erroneous and could have prejudiced the jury.

## II. *THE DUTY TO RETREAT.*

Culverson contends that the district court erroneously informed the jury that he had a duty to retreat before he could act in self-defense. Specifically, Culverson objects to Instruction No. 19 which states:

> In this case even if you should believe from the evidence that the deceased commenced the encounter in question and was the first to offer violence, but further believe from the evidence, beyond a reasonable doubt, that the defendant could, by making a reasonable effort, have avoided or safely withdrawn from it, and thereby avoided further trouble, and that he made no effort to do so, but voluntarily entered into and continued the encounter and shot and killed the deceased, then the killing of the deceased is not excused or justified on the ground of self-defense.

The leading Nevada case which deals with the duty to retreat is State v. Grimmett, 33 Nev. 531, 112 P. 273 (1910). In *Grimmett,* the victim, while standing behind a bar, took a gun from a drawer and fired one shot at the defendant who immediately fired two shots killing the victim. *Grimmett,* 33 Nev. at 534, 112 P.2d at 273. This court held:

> The law is well established that where a person, without voluntarily seeking, provoking, inviting, or willingly engaging in a difficulty of his own free will, is attacked by an assailant, and it is necessary for him to take the life of his assailant to protect his own, then he need not flee for safety, but has the right to stand his ground and slay his adversary.

*Id.* Culverson contends that *Grimmett* stands for the proposition that Nevada does not require a person to retreat when he reasonably believes that he is about to be attacked with deadly force. We agree. First, we note that a rule requiring a non-aggressor to retreat confers a benefit on the aggressor and a detriment on the non-aggressor. Second, it is often quite difficult for a jury to determine whether a person should reasonably believe that he may retreat from a violent attack in complete safety. Thus, a rule which requires a non-aggressor to retreat may confuse the jury and lead to inconsistent verdicts. We believe that a simpler rule will lead to more just verdicts.

One reason that has been given to support the no duty to retreat rule is that the non-aggressor should be able to avoid the appearance of cowardice. *See,* J. Beale, *Retreat From a Murderous Assault,* 16 Harv. L.Rev. 567, 581 (1903). We do not believe this is a valid reason to support the rule we now adopt. However, the reasons cited amply support the rule that a non-aggressor need not retreat if he reasonably believes he is about to be seriously injured or killed.

Therefore, we hold that a person, who is not the original aggressor, has no duty to retreat before using deadly force, if a reasonable person in the position of the non-aggressor would believe that his assailant is about to kill him or cause him serious bodily harm.[2] *See* Johnson v. State, 315 S.E.2d 871 (Ga. 1984); Haynes v. State, 451 So.2d 227 (Miss. 1984); 2 W. LaFave & A. Scott, *Criminal Law* 461 (1986).

## CONCLUSION

We hold that the district court erred when it instructed the jury that self-defense cannot be used as a justification for homicide unless a person is actually in danger of being seriously injured or killed by his attacker. Self-defense may justify a homicide if a person reasonably believes that he is in danger of being seriously injured or killed by his assailant.

We further hold that a person who as a reasonable person believes that he is about to be killed or seriously injured by his assailant does not have a duty to retreat unless he is the original aggressor. The district court erred when it instructed the jury that the appellant had a duty to retreat if he could have safely withdrawn from the encounter.

---

[2]We note that one other Nevada case holds that it is proper to instruct the jury that a defendant has a duty to retreat before using deadly force. *See* State v. Helm, 66 Nev. 286, 309, 209 P.2d 187, 198 (1949). To the extent that *Helm* is inconsistent with out holding in this case, it is overruled.

Accordingly, we reverse Culverson's conviction for first degree murder and remand this matter to the district court for a new trial.

STEFFEN and MOWBRAY, JJ., concur.

ROSE, J., concurring, with whom SPRINGER, J., agrees:

I agree with the majority that Instruction No. 17 may have been confusing to the jury and the instructions did not legally address the situation where a defendant is not in fact faced with actual or immediate danger, but reasonably believes that his or her assailant could kill him or her. But in considering the duty to retreat in the face of deadly force, I would require a non-aggressor to retreat if he or she could do so in complete safety. This differs somewhat from the majority's position that a non-aggressor does not have to retreat, even though he or she could do so with complete safety, if a reasonable person in his or her position would believe that death or serious bodily harm is about to be inflicted upon him or her.

In *Grimmett,* this court held that a person has the right to stand his ground in the face of an attack with deadly force if it is necessary for him to do so to protect his own life. This case is generally consistent with the no duty to retreat rule adopted by the majority. However, other Nevada cases hold that it is proper to instruct the jury that a defendant has a duty to retreat in certain situations before using deadly force. State v. Helm, 66 Nev. 286, 309, 209 P.2d 187, 198 (1949). Therefore, the law in Nevada was certainly not clear as to a non-aggressor's duty to retreat when faced with deadly force, and it is understandable that the district court was faced with a difficult task in stating the correct duty to retreat rule in the jury instructions.

Other states are divided on the issue of whether a defendant has a duty to retreat. The majority of jurisdictions hold that a defendant who was not the initial aggressor is not required to retreat before using deadly force against someone whom he reasonably believes is about to kill or seriously injure him. *See* Johnson v. State, 315 S.E.2d 871 (Ga. 1984); Haynes v. State, 451 So.2d 227 (Miss. 1984); People v. Gonzales, 12 P. 783 (Cal. 1887); *see also,* 2 W.LaFave & A. Scott, *Criminal Law* 461 (1986). A significant minority of states have adopted the rule that a defendant must retreat, if he can safely do so, when threatened with deadly force. *See* State v. Austin, 332 N.W.2d 21 (Minn. 1983); State v. Abbott, 174 A.2d 881 (N.J. 1961); State v. Davis, 51 S.E. 28 (S.C. 1948).

The following rationale justifies not requiring a defendant to retreat from an aggressor if he or she may do so in complete

safety: (1) the State should not force a non-aggressor to act in a cowardly manner; (2) unjustified aggression should not be protected; and (3) it is too difficult for a jury to determine when it is safe for a defendant to retreat.

I disagree that it is cowardly to walk away safely from an attacker rather than to kill him or her, and the majority opinion agrees. Rather, I believe that:

> A really honorable man, a man of truly refined and elevated feeling, would perhaps always regret the apparent cowardice of a retreat, but he would regret *ten times more,* after the excitement of the contest was past, the thought that he had the blood of a fellow-being on his hands.

J. Beale, *Retreat From a Murderous Assault,* 16 Harv. L.Rev. 567, 581 (1903) (emphasis added). The policy of saving one human life, even if it is that of an aggressor, outweighs the interest an individual might have in avoiding the appearance of cowardice.

The person who retreats can usually rely upon the state to punish the aggressor for his or her actions. A jury is required to make many difficult decisions and it is perfectly capable of determining whether a reasonable person should know that he or she could retreat without using deadly force.

Finally, self-defense is measured by necessity. There is no necessity to use deadly force if a defendant may retreat in complete safety. *See* State v. Baker, 160 N.W.2d 240 (Minn. 1968).

For the preceding reasons, I believe the better rule would be that a person who has a reasonable belief that he or she is about to be killed or seriously injured has the duty to retreat, rather than use deadly force against his aggressor, if as a reasonable person he or she should know that a retreat can be made with *complete safety. See* Bartmess v. State, 708 S.W.2d 905, 907 (Tex.App. 1986). Whether a person should reasonably know that he or she can retreat with complete safety will be determined after examination of the totality of circumstances surrounding the attack, including but not limited to, the immediate excitement which is caused by the attack. As Justice Holmes stated, "[d]etached reflection cannot be demanded in the presence of an uplifted knife." Brown v. United States, 256 U.S. 335, 343 (1921).