OPINION
 

 Per Curiam:
 

 Appellant Travis Earl Runion was convicted of first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon for shooting from the window of his vehicle into another vehicle, killing one passenger and wounding another. Runion now appeals on several grounds. For the reasons set forth below, we reverse his convictions for first-degree murder and attempted murder and remand this matter to the district court for a new trial.
 

 FACTS
 

 In October of 1996, Runion was driving his friend, Darla Spomer, to her mother’s home when he became involved in an altercation with the occupants of a vehicle driven by Stephen Goldman near the intersection of Pecos Drive and Stewart Avenue in Las Vegas. Runion fired a gun into the passenger side of Goldman’s vehicle, killing Josh Pendergraft and wounding Moses Companioni. Witnesses to the shooting contacted police who, after interviewing witnesses and investigating the scene, arrested Runion for murder and attempted murder.
 

 
 *1044
 
 Runion’s trial began in February of 1998, at which time conflicting evidence concerning the shooting was adduced.
 

 Companioni testified that Runion was the initial aggressor. He claimed that Runion pulled up alongside Goldman’s vehicle and initiated an argument with Pendergraft. Companioni admitted that there was a gun in Goldman’s vehicle, but insisted that it was under the hood at all times that day and was never in the passenger compartment.
 

 Goldman testified that Pendergraft had “flipped Runion off” and that a verbal argument ensued between the two at the intersection. Goldman further testified that he ducked when he heard shots coming from the direction of Runion’s car. Goldman claimed that the .9 mm weapon, located in the vehicle’s engine compartment, to which he later directed police, belonged to a friend, had been in the vehicle’s engine compartment for some time, and was never in the passenger compartment that day.
 

 Shortly after Goldman’s testimony, a juror informed the district court in chambers that he overheard Goldman telling Companioni during a recess that “I just lied my ass off in there.” After being excused from jury service, the juror testified about what he had overheard. On recall, Goldman denied making the statement and called the juror a liar.
 

 Spomer testified that as she and Runion were driving in his car, Runion told her that a person, later identified as Pendergraft, had “flipped him off.” Largely in response to leading questions posed by the prosecutor, Spomer stated that after an argument ensued at the intersection, she saw Runion pull out a gun, that she heard shots fired, and that she put her head down when the shooting started and, as a result, could not be sure whether any shots were fired from Goldman’s vehicle. Spomer described the occupants of Goldman’s car as “bald, white guys” who “looked like gang members” and who were swearing at Runion. Several eyewitnesses testified that they “heard” gunshots or observed “flashes” coming from Runion’s vehicle but did not observe any gunfire coming from Goldman’s vehicle. However, one eyewitness testified that shots were fired from both vehicles and that she heard two different gunshots.
 

 Several police officers testified concerning their investigation, including the subsequent impounding of a loaded .9 mm gun wrapped in a black and white bandana found in the engine compartment of Goldman’s car as well as a .38 caliber bullet projectile from the passenger side door of Goldman’s car. The officers also found two bullet holes in Goldman’s vehicle, only one of which was fresh. Runion’s weapon was never recovered and no bullet holes were found in his vehicle. Ballistic tests concluded that cartridge casings and a bullet fragment impounded at the
 
 *1045
 
 scene were not fired from the .9 mm weapon found in Goldman’s vehicle.
 

 Runion’s theory of the case was self-defense. He testified that Pendergraft was the initial aggressor. According to Runion, Pendergraft “flipped him off,” and then, as their vehicles idled at a red light, Pendergraft yelled, cussed, and made gang signs at Runion. Runion testified that he was afraid for their safety, that he thought Pendergraft was going to shoot them, and that he reached for his gun and shot in the direction of Goldman’s vehicle after he saw Pendergraft pull out a gun and point it at him.
 

 Penny Helton, Runion’s roommate and friend, testified for the defense about her conversation with him on the night of the shooting. Helton testified that Runion acted very depressed, told her he had shot someone, and cried for a long time. Runion sought testimony from Helton that, three to four days after the shooting, Runion told her that he had fired in self-defense. The prosecution objected, and the district court ruled that the statement was not a prior consistent statement because of an inconsistency in Runion and Helton’s recollections as to when Runion made the statement.
 
 [1]
 
 In closing argument, the prosecutor repeatedly commented on the discrepancy between Runion and Helton’s testimony and implied that Runion had never told Helton the shooting was in self-defense.
 

 The jury found Runion guilty of first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon. In addition to the consecutive terms of imprisonment for the attempted murder with use of a deadly weapon, Runion was sentenced to two consecutive terms of life imprisonment with the possibility of parole for first-degree murder with use of a deadly weapon.
 

 DISCUSSION
 

 I.
 
 Proposed jury instruction on apparent danger as a theory of self-defense
 

 Runion contends that the district court erred in refusing to give the jury an instruction he submitted on apparent danger, arguing that the instructions given to the jury regarding self-defense were confusing and misleading. In particular, Runion points out that Instruction 26 misstated the law by including a statutory definition of self-defense that was repealed in 1993, and that Instruction 25 and Instruction 27 include factual scenarios of self-defense dissimilar to the facts in this case. We agree that the instructions given in this case may have misled the jury. Additionally, Runion
 
 *1046
 
 raises a legitimate concern regarding the sufficiency of self-defense instructions in cases where the evidence presents the issue of apparent danger.
 

 At common law, an individual had a right to defend himself against apparent danger to the same extent as if the danger had been real, provided he acted upon a reasonable apprehension of danger. Specifically, homicide was justified where: (1) the defendant was not the aggressor in the encounter; (2) the defendant was confronted with actual and immediate danger of unlawful bodily harm or he reasonably believed that there was immediate danger of such a harm; and (3) the use of such force was necessary, in a proportionately reasonable amount, to avoid this danger.
 

 Nevada’s self-defense statutory framework has existed for over seventy years.
 
 See
 
 NRS 200.120, 200.130, 200.160, and 200.200.
 

 NRS 200.120 states that “ [justifiable homicide is the killing of a human being in
 
 necessary
 
 self-defense.” NRS 200.120 (emphasis added). This language seems to state that homicide is justified only when a person is in actual danger.
 

 NRS 200.160 states that homicide is “also” justified when a person reasonably believes that he is about to be seriously injured or killed and “there is
 
 imminent
 
 danger of such design being accomplished.” NRS 200.160(1) (emphasis added).
 

 Finally, NRS 200.200 states that if a person kills another in self-defense “it must
 
 appear
 
 that: 1. The danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was
 
 absolutely necessary
 
 ...” NRS 200.200(1) (emphasis added). While the phrase “absolutely necessary” seems to indicate that self-defense is a justification for homicide where a person is actually in imminent danger, the use of the word “appear” implies that self-defense may be a justification for homicide in instances where a person reasonably believes that he is about to be seriously injured or killed but he is mistaken in that belief.
 

 It has long been recognized that criminal and penal statutes are to be strictly construed against the State.
 
 See
 
 Sheriff v. Smith, 91 Nev. 729, 733, 542 P.2d 440, 443 (1975). Where a statute is ambiguous, this court must construe its provisions to give meaning to all of the language and should read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.
 
 See
 
 Bd. of County Comm’rs v. CMC of Nevada, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983); Sawyer v. District Court, 82 Nev. 53, 56, 410 P.2d 748, 750 (1966). The intent of the legislature is the controlling factor in statutory inter
 
 *1047
 
 pretation.
 
 See
 
 Cleghorn v. Hess, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).
 

 There is, however, a presumption that these statutes are consistent with the common law.
 
 See
 
 Ewing v. Fahey, 86 Nev. 604, 607, 472 P.2d 347, 349-50 (1970) (statutory construction presumption that statutes are consistent with common law);
 
 see also
 
 State v. Hamilton, 33 Nev. 418, 426, 111 P. 1026, 1029 (1910) (common law prevails in Nevada except where abrogated). This court’s decisional law with regard to self-defense has construed Nevada’s statutory scheme to be consistent with the common law, recognizing that self-defense is a justification for homicide not only in instances of actual danger but also in instances of apparent danger.
 
 See
 
 Culverson v. State, 106 Nev. 484, 797 P.2d 238 (1990) (recognizing apparent danger theory of self-defense).
 
 [2]
 

 At trial, Runion testified as follows on direct examination:
 

 COUNSEL: Now, at some point after this you shot. Can you tell me what happened before you got your gun out?
 

 RUNION: After I yelled back at them, the driver of the other car became involved.
 

 And then the next thing I saw was the passenger pulled out a gun and pointed it in my direction.
 

 COUNSEL: How did you feel? What did you think when that happened?
 

 RUNION: I thought that they were going to shoot me or Darla.
 

 COUNSEL: Were you afraid?
 

 RUNION: I was very afraid.
 

 COUNSEL: Did you say anything to Darla when you saw that?
 

 RUNION: No. When I seen that, when I seen them pull their gun on me, that’s when I reached for my gun.
 

 
 *1048
 
 And when I reached for my gun I seen Darla, she already ducked down beneath the windows.
 

 On cross-examination, Runion testified to the following:
 

 COUNSEL: You said you returned fire but you never said that they fired. Were shots fired at you?
 

 RUNION: I think there was.
 

 COUNSEL: You think there were shots?
 

 RUNION: Yes.
 

 COUNSEL: You think the shots came from the other car?
 

 RUNION: Yes.
 

 * * *
 

 COUNSEL: Was the passenger looking at you?
 

 RUNION: He was when he pulled his gun out.
 

 COUNSEL: How many shots did the first person in that car fire? Did you mention on direct examination that they had fired shots at you?
 

 RUNION: I thought they fired one shot that I heard.
 

 COUNSEL: One shot is all you think that was fired?
 

 RUNION: One shot is all that I think I heard.
 

 While Runion’s testimony supports a theory of self-defense based on actual danger, other evidence adduced at trial also supported an apparent danger theory of self-defense. In particular, witness testimony and other evidence suggested that Goldman, Companioni, Pendergraft, and a fourth occupant of Goldman’s vehicle who did not testify at trial, Adam Rodriguez, were gang members and that they had made hand gestures, including gang signs, at Runion. Additionally, a gun was later found in the engine compartment of Goldman’s vehicle following the shooting. Moreover, Goldman’s version of the events was called into question by the former juror’s claim that Goldman had apparently lied on the witness stand. Thus, Runion was entitled to argue actual danger (if the jury believed his testimony) and apparent danger (if the jury found that there was no actual danger but that Runion believed that he saw a gun).
 

 At the close of the evidence, Runion proposed the following instruction to the district court:
 

 SELF DEFENSE (ACTUAL DANGER NOT NECESSARY)
 

 Actual danger is not necessary to justify self-defense. If one is confronted by the appearance of danger which arouses in one’s mind, as a reasonable person, an honest conviction and fear that one is about to suffer great bodily injury and if a
 
 *1049
 
 reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing one’s self in like danger and if the person so confronted acts in self-defense upon such appearances and from such fear and one’s convictions, the right of self-defense is the same whether such danger is real or merely apparent.
 

 The district court refused to give the instruction to the jury on the basis that Runion’s testimony prohibited him from arguing apparent danger and that his only theory of defense was actual danger. The district court then submitted the following instructions to the jury.
 

 Instruction 25 quotes NRS 200.120 and NRS 200.130 stating:
 

 Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, property or person, against one who manifestly intends, or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor, in a violent, riotous, tumultuous or surreptitious manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein.
 

 A bare fear of any of the offenses mentioned above, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears and not in a spirit of revenge.
 

 Instruction 26 was derived from NRS 200.160. However, the district court incorrectly used the 1993 version of that statute rather than the 1996 version in effect at the time of the offense.
 
 [3]
 

 Homicide is also justifiable when committed either:
 

 1. In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is danger of such design being accomplished;
 

 
 *1050
 
 2. In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling, or other place of abode in which he is; or
 

 3. By any person, when committed upon the person of another who is engaged in the commission of a felony or an attempted felony, or who after the commission or attempted commission of any such felony is fleeing from the premises or resisting lawful pursuit and arrest within 20 miles of the premises where such felony was committed or attempted to be committed.
 

 Instruction 27 quotes NRS 200.200, stating:
 

 If a person kills another in self-defense, it must appear that:
 

 1. The danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and
 

 2. The person killed was the assailant.
 

 Generally, the defense has the right to have the jury instructed on a theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be.
 
 See
 
 Margetts v. State, 107 Nev. 616, 619, 818 P.2d 392, 394 (1991). However, the district court may refuse a jury instruction on the defendant’s theory of the case which is substantially covered by other instructions.
 
 See
 
 Earl v. State, 111 Nev. 1304, 1308, 904 P.2d 1029, 1031 (1995). The instructions on self-defense submitted to the jury in this case are quotations of NRS 200.120, 200.130, 200.160, and 200.200. Thus, they are largely a correct statement of the law. However, while the statutory language covers apparent danger, by refusing Runion’s proffered instruction on the grounds that his theory of defense was limited to actual danger, the district court precluded defense counsel from arguing apparent danger to the jury. In the absence of a specific instruction or any argument by defense counsel on apparent danger, the instructions given may have misled the jury into concluding that Runion’s actions were not justified even if they found that Runion thought Pendergraft had brandished a weapon but Runion was mistaken in that belief. Additionally, the superfluous language in the instructions addressing factual scenarios of self-defense irrelevant to this case may also have confused the jury. Accordingly, we conclude that the district court erred by limiting Runion’s defense to actual danger.
 

 Because not all aspects of the self-defense statutes will be applicable in each case, we direct the district courts to cease
 
 *1051
 
 merely quoting the applicable statutes when instructing a jury on self-defense, and we take this opportunity to set forth sample instructions for consideration by the district courts in future cases where a criminal defendant asserts self-defense. Whether these or other similar instructions are appropriate in any given case depends upon the testimony and evidence of that case. The district courts should tailor instructions to the facts and circumstances of a case, rather than simply relying on “stock” instructions.
 

 The killing of another person in self-defense is justified and not unlawful when the person who does the killing actually and reasonably believes:
 

 1. That there is imminent danger that the assailant will either kill him or cause him great bodily injury; and
 

 2. That it is absolutely necessary under the circumstances for him to use in self-defense force or means that might cause the death of the other person, for the purpose of avoiding death or great bodily injury to himself.
 

 A bare fear of death or great bodily injury is not sufficient to justify a killing. To justify taking the life of another in self-defense, the circumstances must be sufficient to excite the fears of a reasonable person placed in a similar situation. The person killing must act under the influence of those fears alone and not in revenge.
 

 An honest but unreasonable belief in the necessity for self-defense does not negate malice and does not reduce the offense from murder to manslaughter.
 

 The right of self-defense is not available to an original aggressor, that is a person who has sought a quarrel with the design to force a deadly issue and thus through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault.
 

 However, where a person, without voluntarily seeking, provoking, inviting, or willingly engaging in a difficulty of his own free will, is attacked by an assailant, he has the right to stand his ground and need not retreat when faced with the threat of deadly force.
 

 Actual danger is not necessary to justify a killing in self-defense. A person has a right to defend from apparent danger to the same extent as he would from actual danger. The person killing is justified if:
 

 1. He is confronted by the appearance of imminent danger which arouses in his mind an honest belief and fear that he is about to be killed or suffer great bodily injury; and
 

 2. He acts solely upon these appearances and his fear and actual beliefs; and
 

 
 *1052
 
 3. A reasonable person in a similar situation would believe himself to be in like danger.
 

 The killing is justified even if it develops afterward that the person killing was mistakén about the extent of the danger.
 

 If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the deféndant not guilty.
 

 II.
 
 Helton’s testimony concerning Runion’s statement that he acted in self-defense
 

 Runion also contends that Helton should have been permitted to testify that he told her a few days after the shooting that he fired in self-defense. Runion argues that the statement was admissible as a prior consistent statement. We disagree. However, we conclude that the prosecutor’s comments on the subject to the jury during closing arguments were improper and amounted to prejudicial misconduct.
 

 Prior consistent statements of a witness are generally considered to be inadmissible hearsay.
 
 See
 
 NRS 51.035. However, they are admissible to rehabilitate a witness charged with recent fabrication or having been subjected to improper influence.
 
 See
 
 NRS 51.035(2)(b). A prior consistent statement is not hearsay if: (1) the declarant testifies at trial; (2) the declarant is subject to cross-examination concerning the statement; (3) the statement is consistent with the declarant’s testimony at trial; and (4) the statement is offered to rebut an express or implied charge of recent fabrication or improper influence or motive.
 
 See
 
 Patterson v. State, 111 Nev. 1525, 1531-32, 907 P.2d 984, 988-89 (1995). Additionally, the prior consistent statement, to be admissible, must have been made at a time when the declarant had no motive to fabricate.
 
 See
 
 id.;
 
 see also
 
 Cheatham v. State, 104 Nev. 500, 502, 761 P.2d 419, 421 (1988).
 

 At trial, Runion was questioned on cross-examination concerning what he told Helton about the incident on the evening of the shooting and was accused of fabricating his testimony concerning self-defense. However, when defense counsel later called Helton as a witness and attempted to elicit testimony from her that Runion had told her that he saw a gun in Goldman’s car,
 
 i.e.,
 
 that he shot in self-defense, the district court sustained the State’s hearsay objection, precluding Helton from testifying to Runion’s
 
 *1053
 
 prior statement. In sustaining the State’s objection, the district court stated that the testimony was inadmissible hearsay because Runion testified that he told Helton on the evening of the incident that he shot in self-defense whereas Helton recalled Runion making the statement to her approximately three or four days after the shooting.
 

 The record reveals that, although the statement was materially consistent with Runion’s trial testimony that he shot in self-defense, it was not made at a time when Runion had no motive to fabricate. While he had not yet been arrested, Runion, as the shooter, had a motive to fabricate as soon as the shooting occurred. Accordingly, we conclude that the statement was not admissible as a prior consistent statement and that the district court did not err in refusing to allow Helton to testify concerning the statement on this ground.
 
 [4]
 

 However, we further conclude that the district court erred in allowing the State to emphasize the effect of its ruling concerning the admission of the statement to the jury. Over defense objections, the prosecutor stated during closing arguments that Runion’s self-defense theory lacked corroboration, highlighting that the defense promised in opening statements that Helton would corroborate Runion’s story but that Helton offered no such testimony at trial. The prosecutor urged the jury to infer that Runion’s testimony was fabricated and to disregard it.
 

 A criminal conviction is not lightly overturned on the basis of a prosecutor’s comments standing alone.
 
 See
 
 United States v. Young, 470 U.S. 1, 11 (1985). However, if the issue of guilt or innocence is close, prosecutorial misconduct may be considered prejudicial.
 
 See
 
 Garner v. State, 78 Nev. 366, 373, 374 P.2d 525, 530 (1962).
 

 In this case, because Runion did not deny shooting at Goldman’s vehicle, the jury was faced with the difficult task of determining his mental state at the time. Because the evidence adduced at trial was conflicting, this case became largely a contest of credibility. Accordingly, we conclude that allowing the prosecutor to emphasize in closing arguments the failure of Runion to present Helton’s corroborating testimony, which failure resulted from the district court’s ruling on hearsay, resulted in an improper and prejudicial advantage to the State.
 

 
 *1054
 
 This conduct alone would not warrant reversal. However, the prosecutor’s comments, together with the inability of defense counsel to argue apparent danger to the jury where a specific apparent danger instruction was requested and rejected, denied Runion a fair trial.
 
 See
 
 Libby v. State, 109 Nev. 905, 918-19, 859 P.2d 1050, 1059 (1993) (this court will reverse a conviction when the cumulative effect of errors results in the denial of a fair trial). Upon retrial, the district court is instructed not to allow such comments by the prosecutor if the Helton testimony is not admitted.
 

 CONCLUSION
 

 We conclude that, given the facts in this case, the improper comments made by the prosecutor during closing arguments, in the absence of a specific instruction on apparent danger or any argument by defense counsel on apparent danger, denied Runion a fair trial. Accordingly, we reverse Runion’s convictions for first-degree murder and attempted murder and remand this case to the district court for a new trial.
 
 [5]
 

 [1]
 

 Runion testified that he made the statement the night of the shooting.
 

 [2]
 

 We note that NRS 200.120 was amended in 1983, adding the word “surreptitious” to the definition of justifiable homicide. Additionally, NRS 200.160 was amended in 1993, repealing language adopted in 1931 concerning circumstances involving fleeing felons which does not bear upon the issues in this case. However, the legislature did not amend those provisions of NRS 200.160 which were quoted in a jury instruction at issue in
 
 Culverson
 
 and construed by this court to allow a right of self-defense whether the person killing is confronted with danger that is real or merely apparent.
 
 See Culverson,
 
 106 Nev. at 487-88, 797 P.2d at 239-40. Thus, we presume that the legislature approves of this court’s interpretation of NRS 200.160 as being consistent with the common law.
 
 See
 
 Northern Nev. Ass’n Injured Workers v. SIIS, 107 Nev. 108, 112, 807 P.2d 728, 730 (1991) (where the legislature has amended a statute but did not change a provision’s language subsequent to the court’s interpretation, it is presumed that the legislature approves of the Supreme Court’s interpretation of that statutory provision).
 

 [3]
 

 Subsection 3 of NRS 200.160 was repealed by amendment in the 1993 session. Our decision in this case would not change even if the correct version had been used.
 

 [4]
 

 The district court did not consider whether the statement might be admissible pursuant to any other exception to the hearsay rule, such as an excited utterance. On this ground, the issue of when the statement was made would bear on credibility not admissibility.
 

 [5]
 

 Because this matter is remanded to the district court for a new trial, Runion’s remaining assignment of error concerning the district court’s denial of his motion for a new trial based on new evidence regarding witness Spomer’s credibility is moot. Should Spomer testify at retrial, Runion will have the opportunity to raise these concerns during cross-examination.