An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

EDWIN TAGUBANSA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62399

**FILED**

JAN 2 2 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of battery with a deadly weapon causing substantial bodily harm. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

Appellant Edwin Tagubansa contends that (1) the district court erred in giving an objected-to, original-aggressor jury instruction, which stated that an original aggressor lacks a right of self-defense; (2) the district court abused its discretion in rejecting his proffered jury instruction regarding an original aggressor's use of self-defense in mutual combat; and (3) the State engaged in prosecutorial misconduct that warrants a reversal of the judgment of conviction.[1]

---

[1]Tagubansa also raises the following issues on appeal: (1) whether the State committed a *Brady* violation, *see Brady v. Maryland*, 373 U.S. 83 (1963); (2) whether the district court erred or abused its discretion by denying Tagubansa's motion in limine; and (3) whether cumulative error warrants reversal. We conclude that these issues are without merit, and we will not discuss them further.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-02455

*An original aggressor has a self-defense right*

The settling of jury instructions is reviewed for an abuse of discretion, but whether a jury instruction accurately states the law is reviewed de novo. *Funderburk v. State*, 125 Nev. 260, 263, 212 P.3d 337, 339 (2009).

In setting forth "sample [jury] instructions" on self-defense, the court in *Runion v. State* stated the following: *"The right of self-defense is not available to an original aggressor*, that is a person who has sought a quarrel with the design to force a deadly issue and thus through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault." 116 Nev. 1041, 1051, 13 P.3d 52, 58-59 (2000) (emphasis added). In offering this and other *sample* jury instructions, the *Runion* court cautioned district courts that whether the instructions in its opinion "are appropriate in any given case depends upon the testimony and evidence of that case." *Id.* It directed the district courts to "tailor instructions to the facts . . . , rather than simply relying on 'stock' instructions." *Id.* at 1051, 13 P.3d at 59. As is evident from the *Runion* court's directives, its sample instructions are not a comprehensive articulation of the law that governs original aggressors and self-defense.

While the parties dispute the applicability of self-defense caselaw from other jurisdictions, we need not look beyond Nevada law to determine that original aggressors have a right to self-defense. The matter of *Culverson v. State*, 106 Nev. 484, 797 P.2d 238 (1990), and NRS 200.200(2) are particularly instructive.

In *Culverson*, the defendant was convicted of first-degree murder with the use of a deadly weapon. 106 Nev. at 486, 797 P.2d at 239. According to the defendant's testimony, he shot another man in self-defense after the other man "pointed a gun at [the defendant]." *Id.* The

testimony of witnesses conflicted as to who was the original aggressor: the defendant or the man who died. *See id.* On appeal, the defendant contested a jury instruction that conditioned a self-defense right on a duty to retreat. *Id.* at 488, 797 P.2d at 240. The *Culverson* court held that "a person who as a reasonable person believes that he is about to be killed or seriously injured by his assailant does not have a duty to retreat *unless he is the original aggressor.*" *Id.* at 489, 797 P.2d at 241 (emphasis added). In imposing a duty to retreat on an original aggressor in the context of discussing a right of self-defense, *Culverson* indicates that original aggressors possess such a right that is conditioned on satisfying the duty to retreat. *See id.*

NRS 200.200 also provides for an original aggressor's right of self-defense:

> If a person kills another in self-defense, it must appear that:
>
> 1. The danger was so urgent and pressing that, in order to save the person's own life, or to prevent the person from receiving great bodily harm, the killing of the other was absolutely necessary; and
>
> 2. The person killed was the assailant, *or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given.*

(Emphasis added.) This language indicates that if the person killed was *not* the "assailant," or the original aggressor, then the slayer, who *was* the original aggressor, may have still justifiably killed in self-defense if he or she first made a good-faith effort "to decline any further struggle." NRS 200.200(2); *see also State v. Hall*, 54 Nev. 213, 243, 13 P.2d 624, 633 (1932) ("It is true that a person must be without fault in bringing on an

encounter before he can justify a killing on the ground of self-defense, *or else* must have endeavored in good faith to decline any further struggle before the mortal blow was given." (emphasis added)). These circumstances that justify a homicide also justify the "infliction . . . of bodily injury." NRS 200.275.

*The district court abused its discretion by giving the disputed jury instruction but did not abuse its discretion by refusing to give Tagubansa's proposed jury instruction*

Here, the district court's original-aggressor jury instruction conveyed that original aggressors lack a self-defense right. As is apparent from the law above, this instruction was incorrect and incomplete. *See* NRS 200.200(2); NRS 200.275; *Culverson*, 106 Nev. at 489, 797 P.2d at 241. Since this abuse of discretion concerned Tagubansa's theory of the case, it was an error of constitutional dimension. *See United States v. Sayetsitty*, 107 F.3d 1405, 1414 (9th Cir. 1997).

Although Tagubansa offered a jury instruction about an original aggressor's self-defense right in mutual combat, it was incomplete. The proposed instruction stated, in relevant part, that "[i]f a victim engaged in a mutual combat escalates the level of force with the use or attempted use of a deadly weapon, the original aggressor may use deadly force in necessary self-defense." This instruction failed to account for the original aggressor's duty to retreat, *Culverson*, 106 Nev. at 489, 797 P.2d at 241, and to "decline any further struggle." NRS 200.200(2); *see also* NRS 200.275; *State v. Forsha*, 8 Nev. 137, 140 (1872) (providing that where a person engages in mutual combat and kills the other in so doing, the killing is justifiable upon showing that the surviving killer attempted to decline any further struggle). Thus, the district court did not abuse its discretion in rejecting Tagubansa's proffered instruction.

*The district court's improper jury instruction was harmless error*

Since the district court abused its discretion by proffering an incorrect jury instruction, we now review whether this error was proven harmless beyond a reasonable doubt. *Cortinas v. State*, 124 Nev. 1013, 1027, 195 P.3d 315, 324 (2008). An erroneous instruction is harmless beyond a reasonable doubt if a rational jury would have come to the same verdict if properly instructed. *Id.* at 1029, 195 P.3d at 325.

Tagubansa testified that he fought and used his knife against Miguel Gonzalez after challenging Gonzalez to box and in response to Gonzalez grabbing a gun. In addition, there was testimony that Tagubansa started the violent altercation by attacking Gonzalez. Since the undisputed evidence demonstrated that Tagubansa was the initial aggressor, he needed to retreat or to decline any further struggle to regain the right to self-defense. *Culverson*, 106 Nev. at 489, 797 P.2d at 241; *see also* NRS 200.200. However, there was no evidence presented that Tagubansa made any attempt to retreat or to decline any further struggle. Therefore, even if properly instructed about Tagubansa's right to self-defense, a rational jury could not have found that Tagubansa acted in self-defense. As a result, the district court's erroneous instruction was harmless beyond a reasonable doubt and does not warrant reversal of Tagubansa's conviction.

*The prosecutorial misconduct*

A prosecutor may not "disparage legitimate defense tactics." *Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004). A criminal conviction, however, is not easily overturned solely on a prosecutor's comments. *United States v. Young*, 470 U.S. 1, 11 (1985).

If a defendant does not object to an error, then the error is unpreserved and reviewed for plain error. *See Valdez v. State*, 124 Nev.

1172, 1190, 196 P.3d 465, 477 (2008) (reviewing unpreserved claims of prosecutorial misconduct for plain error); *Riddle v. State*, 96 Nev. 589, 591, 613 P.2d 1031, 1033 (1980) (providing that one must make a "contemporaneous objection" in order to preserve an issue for appeal). To amount to plain error, "the defendant [must] demonstrate[ ] that the error affected his or her substantial rights, by causing 'actual prejudice or a miscarriage of justice.'" *Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (quoting *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003)).

The State made the following remarks about Tagubansa's defense: (1) "[T]he defense conveniently leaves out lots of the facts . . . . They want to find little issues and say, oh, this is a problem . . . . [T]hey're saying, look over here, look over here"; and (2) "Don't let this sleight of hand, this smoke and mirrors, look over here, look over here, distract you from the facts." The record does not indicate that Tagubansa's counsel engaged in illegitimate defense tactics. Thus, these remarks were improper. *See Rose v. State*, 123 Nev. 194, 210-11, 163 P.3d 408, 419 (2007) (providing that it is improper to disparage the defendant's defense by calling it smoke and mirrors); *Butler*, 120 Nev. at 898, 102 P.3d at 84 (providing that it is improper for a prosecutor to "disparage legitimate defense tactics"). We, however, do not conclude that the State's remarks—to which there was no contemporaneous objection—affected Tagubansa's substantial rights. The remarks were therefore not plain error. Nevertheless, we remind the State that such remarks are prosecutorial misconduct.

*Conclusion*

Because the facts presented at trial do not demonstrate that Tagubansa acted in self-defense under Nevada law, the district court's

erroneous jury instruction was harmless error. Furthermore, the State's improper comments did not rise to the level of plain error. Accordingly, we ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. Patrick Flanagan, District Judge
       Fahrendorf, Viloria, Oliphant & Oster, LLP
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

SAITTA, J., with whom CHERRY, J., agrees, dissenting:

The majority concludes that because Tagubansa presented facts at trial that could not establish that he had the right to self-defense under Nevada law, the district court did not commit reversible error by giving the erroneous jury instruction. Although I agree with most of the majority's conclusions, I respectfully disagree with the majority's holding that an original aggressor's right to self-defense is predicated on the aggressor retreating or declining any further struggle and that the district court's error in giving the erroneous jury instruction was harmless. Therefore, I respectfully dissent.

Rather than maintaining this absolute rule, I would adopt the well-reasoned rule employed in California that recognizes the distinction between simple assault and deadly assault. In California, "if a victim of a simple assault engages in a sudden and deadly counterassault, the original aggressor need not attempt to withdraw, and may reasonably use necessary force in self-defense." *People v. Trevino*, 246 Cal. Rptr. 357, 360 (Ct. App. 1988); *see also People v. Gleghorn*, 238 Cal. Rptr. 82, 85 (Ct. App. 1987) (holding that "when the victim of simple assault responds in a sudden and deadly counter assault the original aggressor need not attempt to withdraw and may use reasonably necessary force in self-defense"). This rule recognizes the reality that simple assault and deadly assault are different and provides that a defendant should not be required to unreasonably attempt to retreat from deadly force because he instigated an altercation involving non-deadly force. *See People v. Quach*, 10 Cal. Rptr. 3d 196, 201-02 (Ct. App. 2004) (holding that the victim of a simple assault has no right to use deadly or excessive force against the original

aggressor, and "[i]f the victim uses such force, the aggressor's right of self-defense arises" (internal quotations omitted)).

While the facts presented by Tagubansa at trial do not establish that he attempted to retreat or decline further struggle, this is not necessary under the California rule in order for an original aggressor to regain the right to self-defense. Therefore, I would reverse Tagubansa's conviction and remand this case for a new trial.

_____, J.
Saitta

I concur:

_____, J.
Cherry