GERALD M. CURTIS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 9130

September 22, 1977                    568 P.2d 583

[Rehearing denied November 21, 1977]

*William Dunseath,* Public Defender, and *Michael B. McDonald,* Deputy Public Defender, Washoe County, for Appellant.

*Robert List,* Attorney General, Carson City; *Larry R. Hicks,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, BATJER, C. J.:

A jury convicted Gerald M. Curtis of first degree murder for the death of a two (2)-year-old child, the son of a woman with whom Curtis was living.

After sentence was imposed, Curtis appealed contending there was insufficient evidence to establish that the child's injuries resulted from the criminal agency of another. He also argues the crime lacked the magnitude of first degree murder because there was no evidence to show a deliberate, premeditated, and willful homicide. Subordinate and omnibus claims of prosecutorial misconduct and ineffective assistance of counsel are also advanced.

In September, 1975, Curtis commenced living with Maria Linda Butler and her two children, Richard (age 3) and Kenneth, the deceased child. Shortly thereafter, Curtis assumed the role of disciplinarian for the boys. The discipline included, among other things: "thumping" the boys' heads at meal time; giving them cold showers for up to 20 minutes when they defecated in their pants; making them stand at attention facing a wall for lengthy periods of time; severely beating them with a belt; and, picking Kenneth up by the ears.

On October 16, 1975, Curtis had been unable to find employment, was agitated by a letter from his mother, and had been drinking. At approximately 9:00 p.m., Maria Linda Butler left the boys with Curtis while she went to the store. Some 15 to 20 minutes later, an ambulance took Kenneth Todd Butler, unconscious and suffering from what later was established to be cataclysmic head injuries, to the hospital. The child was immediately placed on life-sustaining equipment, but never regained consciousness and was declared dead on October 23, 1975.

1.   Appellant first contends there is insufficient evidence to support a finding that the child's injuries resulted from the criminal agency of another. Medical testimony established, *inter alia,* that: Kenneth's death resulted from subdural hematoma (clotting on the brain) caused by multiple trauma to the head; the multiple trauma consisted of repeatedly and forcefully beating the child's head either with a hand or against a flat surface

such as a wall or floor; and, due to the rapid and extensive swelling of the brain, the trauma occurred shortly before the child arrived at the hospital. From this testimony, the jury could, and did, reasonably conclude that death resulted not from natural causes or accident but from blows inflicted through the criminal agency of another. Sefton v. State, 72 Nev. 106, 295 P.2d 385 (1956); State of Nevada v. Plunkett, 62 Nev. 265, 149 P.2d 101 (1944).

2.   We also reject appellant's argument that there is no evidence of a willful, deliberate, and premeditated killing. In Payne v. State, 81 Nev. 503, 406 P.2d 922 (1965), we stated:

> To make a killing deliberate as well as premeditated, it is unnecessary that the intention to kill shall have been entertained for any considerable length of time. It is enough if there is time for the mind to think upon or consider the act, and then determine to do it. If, therefore, the killing is not the instant effect of impulse—if there is hesitation or doubt to be overcome, a choice made as a result of thought, however short the struggle between the intention and the act—it is sufficient to characterize the crime as deliberate and premeditated murder. *Id.* at 508–509, 406 P.2d at 925–26.

Premeditation and deliberation are questions of fact for the jury. *See* State of Nevada v. Loveless, 62 Nev. 312, 150 P.2d 1015 (1944). They may be ascertained or deduced from the facts and circumstances of the killing; direct evidence is not required. *See* Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977). Here, the evidence is more than sufficient to support the conclusion that appellant inflicted the multiple trauma to the child's head after he had, with deliberation and premeditation, formed a specific intent to kill. *See* State v. Gee, 498 P.2d 662 (Utah 1972), an analogous factual situation.

3.   Appellant next complains of alleged improper statements made by the prosecutor during closing argument to the jury.[1] Because no objection was made to the statements and

---

[1] In discussing the reliability of Mrs. Butler's testimony, the prosecutor stated:

> What kind of woman loves a man who kills her children? The only greater bias, I think, is that of a person who kills the child. . . . Maria Linda Butler comes into this court and says that although she previously said the defendant abused her children, she said no,

the case is free from doubt, we will not consider appellant's complaint. Dearman v. State, *supra;* Jackson v. State, 93 Nev. 28, 559 P.2d 825 (1977).

4.  Although Curtis concludes, in his in *pro per* supplemental brief, that he was denied effective assistance of trial counsel, we have not been directed to anything in the record to support such a claim. It is presumed an attorney has fully discharged his duties and this presumption can be overcome only by strong and convincing proof to the contrary. *See* Cutler v. State, 93 Nev. 329, 566 P.2d 809 (1977).

Affirmed.

MOWBRAY, THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

---

he didn't abuse my children. . . . A very interesting lady. Brainwashed? I think that was the best description of the whole relationship. This man was a tyrant. He took over the body, souls and minds of those people, and he terrified Todd Butler.

The prosecutor also stated:

State's N, ladies and gentlemen, a pair of little shoes, little sneakers, Todd's little sneakers. We sometimes forget. We talk about Todd Butler, something of a sort of impersonal picture of him. . . . [T]he physical evidence, ladies and gentlemen, shows that this two-year-old standing there quivering in his shoes received multiple blunt trauma of extreme force. . . . Little Todd isn't here in these shoes to tell you ladies and gentlemen what happened. We have to put it together for ourselves. . . . Ladies and gentlemen, you are the conscience of this community, the guardians of our children. I don't ask you to convict this man because a child is dead. . . . I ask you to find him guilty, ladies and gentlemen, because of the evidence that is overwhelming that on October 16, 1975, this man is [*sic*] a foul, filthy, rotten, brooding mood got angry and emptied these shoes forever.