OPINION
 

 By the Court, Maupin, J.:
 

 In this opinion, we examine the extent to which a defendant in a criminal case is entitled to have the trial jury instructed upon his theory of the case. This examination implicates our recent decision in
 
 Crawford
 
 v.
 
 State
 

 [1]
 

 and requires us to revisit this court’s decision in
 
 Honeycutt v. State.
 

 [2]
 

 FACTS AND PROCEDURAL HISTORY
 

 This case involves the State’s prosecution of appellant Anthony Carter on charges of sexual assault and attempted sexual assault.
 

 
 *762
 
 The victim alleged that Carter sexually assaulted her at his apartment in Las Vegas, Nevada. Carter, in an interview with sexual assault investigators, claimed that the interaction leading to the charges was consensual. The victim confirmed her allegations at trial, further testifying that she accompanied Carter to his residence based upon his promise that he would provide her with illicit drugs. Cross-examination undermined her account of the events in question, at least to a degree. To corroborate that the two had engaged in sexual activity, the investigators testified to portions of their interrogation of Carter.
 

 Carter interposed a consent defense through his cross-examination of the victim and through the testimony of the State’s police witnesses concerning his statements to them. He did not testify. Although the trial jury ultimately acquitted Carter on the sexual assault charge, it found him guilty of attempted sexual assault. The district court entered judgment upon the verdict and sentenced Carter to serve a prison term of 62 to 155 months.
 

 On appeal, Carter claims that the district court erred in refusing his proposed instruction on consent; in its failure to admit the entirety of his taped interview with police detectives; in the admission of prior bad act testimony; and in giving a “flight” instruction.
 

 We conclude that rejection of Carter’s proffered consent instruction mandates reversal and remand for a new trial. In this, we retreat from prior authority of this court, upon which the district court relied in refusing to charge the jury as requested. To provide guidance on remand, we also address Carter’s other assignments of error.
 

 DISCUSSION
 

 Theory of the case instruction
 

 Carter asserts that consent was a central issue at trial. Claims of consent in a sexual assault prosecution raise specific questions that must be addressed as part of the trial court’s instructions to the jury.
 
 [3]
 
 Accordingly, in
 
 Honeycutt,
 
 a panel of this court stated as follows: “[Bjecause a perpetrator’s knowledge of lack of consent is an element of sexual assault, we conclude that a proposed instruction on reasonable mistaken belief of consent must be given when requested as long as some evidence supports its consideration.”
 
 [4]
 

 Carter proffered the following “reasonable belief” instruction under Honeycutt:
 

 
 *763
 
 It is a defense to a charge of sexual assault that the Defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse.
 
 If from all the evidence you have a reasonable doubt whether the Defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the Defendant the benefit of that doubt and find him not guilty of said charge.
 

 (Emphasis added.) The district court refused Carter’s proposed instruction on the ground that it was substantially covered in other instructions. In this connection, the court instructed the jury on the elements of the crime of sexual assault and that the alleged victim’s voluntary consent to engage in sexual intercourse is a defense to such a charge. It further instructed the jury that
 

 [pjhysical force is not necessary in the commission of sexual assault. The crucial question is not whether a person was physically forced to engage in a sexual assault but whether the act was committed without her consent or under conditions in which the defendant knew or should have known, the person was incapable of giving her consent or understanding the nature of the act. There is no consent where a person is induced to submit to the sexual act through fear of death or serious bodily injury.
 

 Unlike the emphasized language in Carter’s proposed instruction, the instructions given failed to address the significance of any finding by the jury concerning consent, to wit: that a reasonable doubt as to whether the victim consented, or whether the defendant harbored a reasonably mistaken belief of consent, would require an acquittal. Until recently, this kind of omission did not necessarily require reversal.
 
 [5]
 

 In
 
 Honeycutt,
 
 the defendant sought a consent instruction similar to that proffered by Carter. Our court approved this consent language with one caveat, the instruction was incomplete and properly refused if it failed to additionally state that
 

 a belief that is based upon ambiguous conduct by an alleged victim that is the product of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another is not a reasonable good faith belief.
 
 [6]
 

 Because the defendant in
 
 Honeycutt
 
 proffered a reasonable belief of consent instruction to which he was otherwise entitled but omit
 
 *764
 
 ted a proviso that the defendant’s belief in that regard is not reasonable when based upon conduct produced by violence or fear, the
 
 Honeycutt
 
 majority concluded that the district court committed no error in refusing Honeycutt’s proffered instruction.
 

 Retreat from Honeycutt
 

 The
 
 Honeycutt
 
 majority required that the defendant include language that undermines his defense in order to have a reasonable belief of consent instruction given, and to preserve the validity of the issue on direct appeal. Interestingly, we have never placed such an obligation with these consequences upon litigants, and the
 
 Honeycutt
 
 majority cited no precedent that exacts this burden.
 
 [7]
 
 Moreover, the defendant in
 
 Honeycutt
 
 was apparently denied his theory of defense based upon a technical failure to include language that the State easily could have requested.
 
 [8]
 
 Thus,
 
 Honeycutt
 
 creates a trap for the unwary that exalts form over substance where a defendant’s right to a fair trial is at stake.
 
 [9]
 

 [Headnote 1]
 

 Carter’s instruction likewise omitted the additional language required by
 
 Honeycutt.
 
 That omission is of interest because Carter was tried after
 
 Honeycutt
 
 was decided. Defense counsel should have known that the instruction was incomplete and was subject to rejection by the district court. On appeal, without mentioning this defect, Carter simply argues that he was entitled to the shortened version that he presented. We disagree but now retreat from the harsh result mandated under
 
 Honeycutt
 
 and hold that, when such a proffer is made, the district court must give the complete
 
 Hon-eycutt
 
 instruction. Thus, while Carter’s proposed instruction omitted material clearly required under
 
 Honeycutt,
 
 such a proffer should not be per se rejected as incomplete.
 
 [10]
 

 
 *765
 
 The majority opinion in
 
 Honeycutt
 
 suffers from four important vices. First,
 
 Honeycutt
 
 improperly rejected a theory of defense instruction solely on the ground that the instruction, although legally correct, was an incomplete statement of the law. Second, it improperly implies that a defendant must proffer theory of the defense instructions in sexual assault cases that articulate both defense and prosecution theories. Third, it implies that failure to do so would invalidate theory of the case proffers made in other contexts, such as in murder cases where justifiable homicide is at issue. Fourth, it relieves district courts of the obligation to give complete theory of the case instructions. We therefore further hold that, in general, a defendant is not required to proffer both the defense’s and the State’s theories of the case to have an instruction given or to preserve error in connection with the proffer for appellate review,
 
 [11]
 
 and that district courts must give complete and accurate theory of the case instructions even though the instruction requested is viewed as incomplete. Thus, to the extent that
 
 Honeycutt
 
 is inconsistent with this view, we expressly overturn it.
 

 Our ruling today does not mean a defendant in a criminal case is entitled to have an incomplete statement of the law given in a trial court’s jury instructions. First, the State may request additional language,
 
 e.g.,
 
 as should have been the case here, the fact that reliance on ambiguous conduct manifesting consent is not reasonable if the conduct is induced by force or fear. Second, the district court should complete the instruction sua sponte or may assist the parties in crafting complete instructions. And, as stated by Justice Rose in his dissent to the
 
 Honeycutt
 
 majority:
 

 If [a] proposed [defense] instruction is poorly drafted, a district court has an affirmative obligation to cooperate with the defendant to correct the proposed instruction or to incorporate the substance of such an instruction in one drafted by the court.
 
 [12]
 

 Finally, we wish to stress that our retreat from
 
 Honeycutt
 
 does not mean that district courts must accept misleading, inaccurate or duplicitous jury instructions.
 

 
 *766
 

 Partial reaffirmation of Honeycutt and our retreat from Stroup
 
 v. State
 
 [13]
 

 Honeycutt
 
 remains valid authority insofar as it requires district courts to allow theory of the case instructions in sexual assault cases stating that an alleged perpetrator’s knowledge of lack of consent is an element of sexual assault and, assuming supporting evidence has been presented, that a reasonable mistaken belief as to consent is a defense to a sexual assault charge. Thus, although we retreat from
 
 Honeycutt
 
 in one sense, we reaffirm it in another.
 

 While the court’s instructions in this case stated that consent was a defense to the charges against Carter, they did not additionally state that a reasonable doubt on that proposition required that the jury render a verdict of acquittal. Going further, the instructions failed to indicate that a reasonable doubt as to whether the defendant acted under a reasonable but mistaken belief of consent likewise gave rise to a duty to acquit. As explained below, this language is required under a reading of
 
 Honeycutt
 
 with our recent decision in
 
 Runion v.
 
 State,
 
 [14]
 
 and
 
 Crawford v. State,
 

 [15]
 

 all of which unwind, to a degree, the effect of our 1994 decision in the case of
 
 Stroup v. State.
 

 [16]
 

 Thus, under current authority, Carter’s defense theory was not fully covered by the district court.
 

 By way of history,
 
 Stroup
 
 involved a murder conviction where the district court instructed the trial jury on the elements of justifiable homicide but refused to instruct that a finding of justifiable homicide necessitated a verdict of not guilty. We affirmed, concluding that this necessity was covered in the elements instruction on justifiable homicide.
 
 [17]
 
 This ruling fairly left the implication that general elements instructions, coupled with a standard reasonable doubt instruction, adequately state a defense theory of the case, thus making it unnecessary for district courts to explicitly include language stating the duty to acquit under theory of defense instructions.
 

 The dissent in
 
 Stroup
 
 argued that “technical instructions’’ defining when justifiable homicide may be found were insufficient for a fair trial when the instructions failed to advise that such a finding required acquittal.
 
 [18]
 
 The dissenting view developed no particular
 
 *767
 
 following for a time. However, we approved the insertion of such language in theory of the case instructions in
 
 Runion v. State,
 

 [19]
 

 requiring “significance” language in support of a defense in a murder case based upon reasonably perceived danger from the decedent. And, as stated, this requirement also now exists under
 
 Honeycutt
 
 in the context of sexual assault prosecutions. Thus, the approval of “significance” instructions in
 
 Runion
 
 and
 
 Honeycutt sub silentio
 
 embraces the dissenting view in
 
 Stroup.
 
 Finally, in our recent decision in
 
 Crawford,
 
 we explicitly held that district courts, upon request, must include statements of the significance of findings made in aid of theory of defense instructions.
 
 [20]
 

 In summary, the rejection of Carter’s theory of defense instruction, which contained duty to acquit language, runs afoul of our recent embrace in
 
 Runion, Honeycutt
 
 and
 
 Crawford
 
 of the principles advocated in the dissenting opinion in
 
 Stroup.
 
 In line with those decisions, we now expressly reiterate that, if requested, theory of the case instructions must include the significance of findings made under the theory posited.
 
 [21]
 

 Application of the current holdings to this case
 

 Carter accurately, but partially, stated the applicable doctrine in his theory of the case instruction. Additionally, the district court’s other instructions failed to include a complete statement of that theory.
 
 [22]
 
 Accordingly, we are constrained to reverse Carter’s conviction and remand this matter for a new trial.
 
 [23]
 
 On remand, the district court must give the complete
 
 Honeycutt
 
 instruction.
 

 Investigator’s interview with Carter
 

 The district court allowed the State to play enough of a taped interview with Carter to confirm the victim’s allegation that a sexual
 
 *768
 
 encounter occurred. Carter contends that the district court abused its discretion in excluding the remaining portions of the interview because the entire tape was the best evidence
 
 [24]
 
 of the conversation. Carter failed to challenge the district court’s exclusion of the tape on best evidence grounds. Accordingly, Carter failed to properly preserve this issue for appeal, and the issue is waived.
 
 [25]
 
 Additionally, the best evidence rule is not implicated by the testimony concerning the interview.
 
 [26]
 

 At trial, the State lodged a timely hearsay objection to the remainder of the interview.
 
 [27]
 
 The State argued that Carter should not be allowed to present or elaborate upon his substantive version of events through his own hearsay statement. Carter argued in turn that the tape was admissible under exceptions to the rule against admission of hearsay,
 
 i.e.,
 
 as a statement against interest,
 
 [28]
 
 as a prior inconsistent statement of the police witness who conducted the interview,
 
 [29]
 
 and as a statement of Carter’s then-existing mental or emotional or physical condition.
 
 [30]
 
 The district court found that Carter’s taped statements, which mentioned possible drug use, were not incriminating, and found no inconsistencies between the testimony of the witness and statements on the tape. Finally, the district court determined that the statements were made some months after the alleged sexual assault and, thus, could not be admitted under the exception for statements of a defendant’s then-existing mental, emotional or physical condition. All of these findings were supported by substantial evidence. We therefore conclude that the district court properly excluded the tape on hearsay grounds.
 
 [31]
 

 
 *769
 

 Prior bad acts and character evidence
 

 The district court admitted evidence that Carter used and provided illegal drugs to a third party, as well as evidence that Carter was suspended from his employment. Carter contends the evidence prejudiced his right to a fair trial.
 

 There is a general presumption that uncharged bad acts are not admissible.
 
 [32]
 
 Further, NRS 48.045(2) forbids the admission of prior bad acts to show that a person acted in conformity with charged conduct. Generally speaking, we require prescreening of such evidence under
 
 Petrocelli v.
 
 State
 
 [33]
 
 to determine relevancy, whether the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, and whether it is proven by clear and convincing evidence.
 
 [34]
 
 A trial court’s failure to conduct a
 
 Petrocelli
 
 hearing on the record may be cause for reversal, but reversal is not mandated absent any prejudicial effect.
 
 [35]
 

 Prior drug involvement
 

 Carter did not timely object to the admission of the State’s evidence that he used illegal drugs or supplied them to others. Thus, he failed to properly preserve this issue for appeal. Beyond that, our review of the record reveals that Carter also elicited evidence of his illegal drug use. A party who participates in an alleged error is estopped from raising any objection on appeal.
 
 [36]
 
 We therefore conclude that the district court did not err in admitting the evidence of illegal drug use.
 

 Loss of Carter’s job
 

 One of the police investigators testified that, when he and his colleagues went to arrest Carter at his apartment, Mrs. Carter indicated that Carter was at work. In response to a general follow-up question, the officer stated that he checked at Carter’s place of employment and learned that Carter had been suspended.
 

 
 *770
 
 A witness’s spontaneous or inadvertent references to inadmissible material, not solicited by the prosecution, can be cured by an immediate admonishment directing the jury to disregard the statement.
 
 [37]
 
 Here, the district court sustained Carter’s contemporaneous objection to the evidence and admonished the jury accordingly. We conclude that these measures cured any problem created as a result. Additionally, this claim of error is marginal at best, given that the testimony supported the State’s theory, discussed below, that Carter had evaded apprehension by the authorities.
 

 Flight instruction
 

 Carter contends that the district court erred in giving a flight instruction to the jury. It is proper to instruct on flight where it is reasonable to infer flight from the evidence presented.
 
 [38]
 

 Here, the State presented evidence that Carter’s wife misled detectives as to his whereabouts and that Carter concealed himself under a pile of clothes in his apartment when he could hear the police searching for him. Accordingly, we conclude that sufficient evidence supported the instruction and that the district court did not abuse its discretion in giving it.
 

 CONCLUSION
 

 Carter was entitled to a complete instruction on the issue of reasonable belief of consent. Accordingly, we reverse the judgment of conviction entered below and remand this matter for a new trial to be conducted in accord with this opinion.
 

 Becker, C.J., Rose, Gibbons, Douglas, Hardesty and Parraguirre, JJ., concur.
 

 [1]
 

 121 Nev. 744, 121 P.3d 582 (2005).
 

 [2]
 

 118 Nev. 660, 56 P.3d 362 (2002).
 

 [3]
 

 See Margetts v. State,
 
 107 Nev. 616, 619-20, 818 P.2d 392, 394 (1991).
 

 [4]
 

 118 Nev. at 670, 56 P.3d at 369.
 

 [5]
 

 See
 
 discussion
 
 infra
 
 of
 
 Stroup v. State,
 
 110 Nev. 525, 874 P.2d 769 (1994).
 

 [6]
 

 Honeycutt,
 
 118 Nev. at 671, 56 P.3d at 369 (quoting 1
 
 California Jury Instructions, Criminal
 
 10.65, at 828 (6th ed. 1996)).
 

 [7]
 

 Cf.
 
 SCR 172(l)(c) (regarding candor to tribunals and providing that attorneys shall not knowingly fail to disclose controlling legal authority known to be directly adverse to the position of the client and not disclosed by opposing counsel).
 

 [8]
 

 The State in
 
 Honeycutt
 
 was privy to the California materials containing the omitted language that accompanied
 
 Honeycutt’s
 
 rejected instruction.
 
 See supra
 
 note 6.
 

 [9]
 

 Honeycutt,
 
 118 Nev. at 677-79, 56 P.3d at 373-74 (Rose, J., dissenting).
 
 Honeycutt
 
 is additionally problematic because we are not told in the opinion whether the theory of defense was in some way covered by other instructions.
 

 [10]
 

 The court’s instructions below contain language similar to that fatally omitted from the proffer in
 
 Honeycutt.
 
 On this ground, the incomplete instruction may have satisfied
 
 Honeycutt.
 
 This said, the
 
 Honeycutt
 
 court provided the exact instruction blueprint it wanted followed. That blueprint is much more detailed than the instructions given in this case. Also, as we now hold, such an omission is not fatal to these types of proffers.
 

 [11]
 

 This assumes compliance with SCR 172(l)(c). While SCR 172(l)(c) does not require that proffered jury instructions include both sides of the case, proffers must still comply with this rule when supporting authority is submitted. There is nothing in this record to suggest that the State and the district court were unaware of
 
 Honeycutt's
 
 full requirement and, as noted in the margin above, the State’s theory was in large part stated in the instructions given.
 
 See supra
 
 note 10.
 

 [12]
 

 118 Nev. at 677-78, 56 F.3d at 373-74 (Rose, J., dissenting).
 

 [13]
 

 110 Nev. 525, 874 P.2d 769 (1994).
 

 [14]
 

 116 Nev. 1041, 13 P.3d 52 (2000).
 

 [15]
 

 121 Nev. 744, 121 P.3d 582 (2005).
 

 [16]
 

 110 Nev. 525, 874 P.2d 769.
 

 [17]
 

 Id. at 528-29, 874 P.2d at 771 (noting that the defendant’s right to have the jury instructed on his theory of the case does not include the absolute right to have his own instruction given, particularly when the law encompassed in that instruction is fully covered by another instruction).
 

 [18]
 

 Id.
 
 at 529, 874 P.2d at 772 (Springer, L, dissenting).
 

 [19]
 

 116 Nev. at 1050, 13 P.3d at 58.
 

 [20]
 

 121 Nev. at 753-54, 121 P.3d at 588-89 (2005) (requiring “significance” language in a heat-of-passion instruction that, in a murder case, the jury’s reasonable doubt as to whether the defendant acted in the heat of passion implicated a reduced charge of manslaughter).
 

 [21]
 

 Our ruling today places the defendant on an equal footing with the State because standard instructions in criminal cases generally articulate the State’s theory of the case.
 

 [22]
 

 We wish to reiterate that the district court’s rulings were consistent with the full majority views in
 
 Honeycutt
 
 and
 
 Stroup.
 
 As noted, we have chosen to revisit that authority in this appeal.
 

 [23]
 

 The case against Carter depended largely upon the alleged victim’s credibility, and the jury acquitted Carter on one of two charges stemming
 
 *768
 
 from the same interaction. Thus, we cannot conclude that the error below was harmless beyond a reasonable doubt.
 
 See Chapman v. California,
 
 386 U.S. 18 (1967).
 

 [24]
 

 See
 
 NRS 52.235 (providing that “[t]o prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in this title”).
 

 [25]
 

 See McKenna
 
 v.
 
 State,
 
 114 Nev. 1044, 1054, 968 P.2d 739, 746 (1998).
 

 [26]
 

 See U.S. v. Fagan,
 
 821 F.2d 1002, 1008 n.1 (5th Cir. 1987);
 
 see also United States v. Gonzales-Benitez,
 
 537 F.2d 1051, 1053-54 (9th Cir. 1976).
 

 [27]
 

 Hearsay is an out-of-court statement, offered to prove the truth of the matter asserted.
 
 See
 
 NRS 51.035.
 

 [28]
 

 See
 
 NRS 51.345.
 

 [29]
 

 See
 
 NRS 51.035(2)(a).
 

 [30]
 

 See
 
 NRS 51.105(1).
 

 [31]
 

 See Qualls v. State,
 
 114 Nev. 900, 902, 961 P.2d 765, 766 (1998) (“The trial court’s determination to admit or exclude evidence is to be given great deference and will not be reversed absent manifest error.”);
 
 see also People v. Edwards,
 
 819 P.2d 436, 456-57 (Cal. 1991) (stating that a defendant in a crim
 
 *769
 
 inal case may not introduce hearsay evidence for the purpose of testifying while avoiding cross-examination).
 

 [32]
 

 Tavares
 
 v.
 
 State,
 
 117 Nev. 725, 731, 30 P.3d 1128, 1131 (2001).
 

 [33]
 

 101 Nev. 46, 692 P.2d 503 (1985) (validating prescreening procedures for admission of prior bad act evidence under NRS 48.045(2)).
 

 [34]
 

 Tinch
 
 v.
 
 State,
 
 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997).
 

 [35]
 

 Qualls,
 
 114 Nev. at 903, 961 P.2d at 767.
 

 [36]
 

 Jones
 
 v.
 
 State,
 
 95 Nev. 613, 618, 600 P.2d 247, 250 (1979).
 

 [37]
 

 Sterling v. State,
 
 108 Nev. 391, 394, 834 P.2d 400, 402 (1992).
 

 [38]
 

 Hutchins v. State,
 
 110 Nev. 103, 113, 867 P.2d 1136, 1143 (1994).