An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ISMAEL CASILLAS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63749

**FILED**

APR 2 5 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction entered pursuant to a jury verdict of child abuse and neglect and child abuse and neglect with substantial bodily harm. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

*Sufficiency of the evidence*

Appellant Ismael Casillas contends that insufficient evidence supports his convictions. He argues that the State failed to prove that anything more than an accident occurred. We review the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted); *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008).

The jury heard testimony that the victim was born on June 17, 2011. He arrived three weeks early and endured a lengthy labor with his

umbilical cord wrapped around his neck. His Appearance, Pulse, Grimace, Activity, and Respiration (APGAR) scores were low, he appeared to have an infection, and he was placed in the hospital's neonatal intensive care unit. While still in the hospital's care, he was treated for jaundice. And, when he was released six days later, his release was conditioned upon regular home nurse visits to check his bilirubin levels.

The victim's parents, Casillas and Monique, both worked. Casillas usually watched the victim because he had a flexible work schedule. Monique took the victim to his scheduled pediatric wellness visits, and she took him to the pediatrician when he had a fever, his throat was sore, his nose was runny and he was coughing, and when he was spitting-up after feeding. The victim was treated for a throat infection and gastroesophageal reflux, and he was believed to have breath-holding spells. By the time the victim was two months old, he had been to the pediatrician's office six times.

On October 4, 2011, Monique's father watched the victim in the morning, Casillas watched the victim in the afternoon, and Monique visited the victim, saw that he was fine, and returned to work at 5:45 p.m. The victim suffered a seizure at 6:20 p.m. Casillas called 911 for help and carried the victim outside to await the ambulance. A paramedic observed that the victim was lethargic and not tracking, gave the victim some oxygen, and administered an anti-seizure medicine when he began to seize. The hospital tested the victim and released him to the care of his parents.

On October 12, 2011, the victim suffered another seizure while under Casillas's care. Casillas called 911 for help and carried the victim outside to await the ambulance. The paramedic observed that victim acted normally and testified that the ride to the hospital was uneventful. The hospital conducted a CAT scan of the victim, tested his blood and urine, concluded that he was fine, and told the parents to make a follow-up visit with the pediatrician.

On October 13, 2011, Casillas and Monique took the victim to the pediatrician. The pediatrician was concerned about the victim's two seizures, determined that he had bulging on the softest part of his head, and immediately referred him to a neurologist. The neurologist considered the possibility of infection and pressure inside the brain and sent the victim to the Sunrise Hospital emergency room for a lumbar puncture and an MRI scan of the brain. He determined that the victim did not have meningitis and prescribed an anti-seizure medicine. And he later testified that his observations were consistent with the victim having been shaken—but he also testified that he saw nothing to indicate abuse.

The Sunrise Hospital contacted Dr. Sandra Cetl, a pediatrician who specializes in child abuse pediatrics, and asked her to evaluate the victim for child abuse. Dr. Cetl consulted with Dr. Neha Mehta, a board certified child abuse pediatrician; Dr. Arthur Montes, a pediatric radiologist; and Dr. Jack Abrams, an ophthalmologist.

Dr. Montes determined that the victim's CAT and MRI scans revealed that he had two subdural brain bleeds, the bleeds were in

different locations, and the bleeds were different ages. Dr. Montes concluded that the victim had sustained two separate injuries and, because there was no external trauma to the victim's head and the blood had traveled into the fissure between the two hemispheres, the injuries were suspicious and suggested that shaking was involved.

Dr. Abrams examined the victim and determined that he had retinal hemorrhages in all four quadrants of both eyes. Dr. Abrams ruled out natural causes because the hemorrhages occurred in both eyes. He opined that the individual diagnoses of subdural hemorrhage, seizures, and retinal hemorrhages indicated abusive head trauma. And he testified that retinal hemorrhages may have lasting consequences to the victim because the inflammation that occurs during the healing process causes scarring and the scarring may result in vision loss.

Drs. Cetl, Mehta, and Montes reviewed the CAT and MRI scans, the ophthalmic report, and the other tests conducted on the victim, and concluded that the victim had suffered an abusive trauma. The Sunrise Hospital reported the suspected child abuse to the Clark County Child Protective Services and the Henderson Police Department.

Detective Thomas Logiudice interviewed Casillas. Although the interview was recorded and the recording was played for the jury, neither the recording nor a transcript was provided for our review. Logiudice testified that "[v]ery early on in the interview, we actually got to hear Mr. Casillas tell us the baby was shaken." Logiudice stated that Casillas's apologies, questions, and responses of guilt provided him with

everything he needed to establish that a non-accidental head trauma occurred. And Logiudice observed that "[p]eople who are wrongly accused of crimes or accusations, they don't sit in a chair calmly for an hour and a half in front of you and just say I didn't do it."

Casillas testified on his own behalf. He stated that he calmed the victim down by holding "him on his chest right here, if not I would hold him this way, and I would eventually, you know, bounce up and down but like rocking him at the same time, that's what I would do." He denied ever violently shaking or striking the victim. And he acknowledged that by the end of the police interview he believed that he may have accidently harmed the victim.

We conclude that a rational juror could infer from this evidence that Casillas twice abused his child and that the second instance of abuse resulted in substantial bodily harm. *See* NRS 0.060; NRS 200.508(1). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

*Sufficiency of the indictment*

Casillas contends that the indictment failed to provide adequate notice of what he must defend against and was drafted in a manner that allowed the State to change its theory of prosecution during the trial. He argues that the State's theory at the start of the trial was that the abuse was committed by a violent act and its theory at the

conclusion of the trial was that the abuse was committed by allowing the victim's head to rock back and forth. And he asserts that the indictment's allegation that the abuse was accomplished by "manner and means unknown" was prejudicial because it "foreclosed any possible defense that the injury was an accident."

An indictment "must contain the elements of the offense intended to be charged [and] . . . be sufficient to apprise the accused of the nature of the offense so that he may adequately prepare a defense," *Laney v. State*, 86 Nev. 173, 178, 466 P.2d 666, 669 (1970) (internal quotation marks omitted), and "be definite enough to prevent the prosecutor from changing the theory of the case," *Husney v. O'Donnell*, 95 Nev. 467, 469, 596 P.2d 230, 231 (1979). An indictment may allege that the offense was committed by one or more specified means or that it was committed by an unknown means. NRS 173.075(2).

We apply a reduced standard to test the sufficiency of the indictment because it is being challenged for the first time on appeal. *See Larsen v. State*, 86 Nev. 451, 456, 470 P.2d 417, 420 (1970) ("If the sufficiency of an indictment or information is not questioned at the trial, the pleading must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." (internal quotation marks omitted)). We conclude that the indictment plainly charges the offenses for which Casillas was convicted and therefore no relief is warranted.

*Proposed defense instruction*

Casillas contends that the district court erred by rejecting his proposed theory-of-defense instruction. Casillas's proposed instruction stated, "If you find that the child suffered unjustifiable physical pain or mental suffering due to an accident or natural causes, including but not limited to an infectious disease, then you must find the defendant not guilty." The district court rejected this instruction after concluding that it was covered by the reasonable doubt instruction.

"The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). We have repeatedly held that "a defendant is entitled to a jury instruction on his theory of the case, so long as there is evidence to support it, regardless of whether the evidence is weak, inconsistent, believable, or incredible." *Hoagland v. State*, 126 Nev. ___, ___, 240 P.3d 1043, 1047 (2010); *Ouanbengboune v. State*, 125 Nev. 763, 774, 220 P.3d 1122, 1129 (2009); *Rosas v. State*, 122 Nev. 1258, 1262, 147 P.3d 1101, 1104 (2006); *see also Carter v. State*, 121 Nev. 759, 767, 121 P.3d 592, 597 (2005) (if requested, the district court must provide instructions on the significance of findings that are relative to the defense's theory of the case). And we have stated that "[i]f a proposed defense instruction is poorly drafted, a district court has an affirmative obligation to cooperate with the defendant to correct the proposed instruction or to incorporate the substance of such an instruction in one

drafted by the court." *Carter*, 121 Nev. at 765, 121 P.3d at 596 (internal alterations and quotation marks omitted).

Our review of the record reveals that substantial evidence was presented that the victim's injuries may have flowed from natural causes or been the result of an accident—this evidence included testimony by Casillas's expert witness, Dr. Robert Rothfeder. Casillas's proposed instruction was poorly drafted, but it was not "misleading, inaccurate or duplicitous," *id.*, and it was not an incorrect statement of the law, *see generally* NRS 194.010(6); *Curtis v. State*, 93 Nev. 504, 568 P.2d 583 (1977). We conclude that the district court erred by refusing to instruct the jury on Casillas's theory of defense, the error was not harmless, and the error warrants reversal. *See Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983) ("If a defense theory of the case is supported by some evidence which, if believed, would support a corresponding jury verdict, failure to instruct on that theory totally removes it from the jury's consideration and constitutes reversible error.").

*Physical injury instruction*

Casillas contends that the district court erred by failing to instruct the jury on the definitions of "physical injury" and "mental injury" as required by our decision in *Clay v. Eighth Judicial Dist. Court*, 129 Nev. ___, 305 P.3d 898 (2013). Because Casillas did not object to the adequacy of jury instructions, we review his claim for plain error affecting his substantial rights. *Ramirez v. State*, 126 Nev. ___, ___, 235 P.3d 619, 623 (2010).

SUPREME COURT
OF
NEVADA

(O) 1947A

The State accused Casillas of committing child abuse by causing nonaccidental physical injuries to the victim. The jury was instructed that a person who wilfully, unlawfully, and feloniously causes or allows a child "to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect is guilty of child abuse," it was instructed on the definitions of "abuse and neglect," "permit," and "allow," but it was not instructed on the definition of "physical injury."

When the basis of a child abuse charge is nonaccidental physical injury, physical injury is an element of the offense that must be proven beyond a reasonable doubt. *See* NRS 200.508(1), (2), (4)(d); *Clay*, 129 Nev. at ___, 305 P.3d at 902-03. We have determined that "[t]he statutory definition of 'physical injury' set forth in NRS 200.508(4)(d) is more limited than a layperson's common understanding of the term . . . [therefore, it is] incumbent upon the prosecutor to provide the statutory definition of this element" to the grand jurors when seeking an indictment for child abuse that is based on nonaccidental physical injury. *Clay*, 129 Nev. at ___, 305 P.3d at 905-06. Because a prosecutor must provide the grand jury with the definition of physical injury for its probable cause determination, it follows that a district court must provide the definition to the petit jury for its reasonable-doubt determination.

The district court's failure to instruct the jury on the definition of physical injury appears plainly on the record. However, we conclude that this error, by itself, did not affect Casillas's substantial rights.

*Improper opinion testimony*

Casillas contends that the district court violated his constitutional right to have his case decided by a fair and impartial jury when it admitted improper opinion testimony as to his guilt. He argues that Detective Logiudice impermissibly commented on his guilt and invaded the province of the jury by testifying that he arrested Casillas when "all the elements of the crime were met," Casillas made "responses of guilt" during the interview that "established everything for the non-accidental head injury," and Casillas's body language and other subtle clues suggested that he was guilty. Because Casillas did not object to this testimony, we review his claim for plain error affecting his substantial rights. *See Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).

Although "[d]istrict courts are vested with considerable discretion in determining the relevance and admissibility of evidence," *Castillo v. State*, 114 Nev. 271, 277, 956 P.2d 103, 107-08 (1998), we have recognized that it is impermissible for a law enforcement officer to give an opinion on the ultimate issue of guilt or innocence because "jurors 'may be improperly swayed by the opinion of a witness who is presented as an experienced criminal investigator,'" *Cordova v. State*, 116 Nev. 664, 669, 6 P.3d 481, 485 (2000) (quoting *Sakeagak v. State*, 952 P.2d 278, 282 (Alaska Ct. App. 1998)).

Detective Logiudice was not noticed or called as an expert witness. However, the State presented him as an experienced interviewer and his opinion of Casillas's guilt appears plainly on the record. The State

recognized and attempted to cure the error: during redirect examination, it elicited the detective's acknowledgement that only the jury can determine whether Casillas abused the victim and, during rebuttal argument, it told the jury to disregard the detective's opinion as to whether Casillas committed child abuse. The error appears to be prejudicial given the limited evidence of Casillas's culpability. However, the record before us does not demonstrate that the error, by itself, affected Casillas's substantial rights. *See Cureton v. State*, 169 P.3d 549, 551-52 (Wyo. 2007) (concluding that an officer's impermissible comments on defendant's guilt did not affect her substantial rights because the jury's determination did not hinge solely on the officer's improper testimony).

*Cumulative error*

Casillas contends that cumulative error deprived him of a fair trial and warrants reversal of his conviction. "'The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though [the] errors are harmless individually.'" *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (quoting *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002)). "When evaluating a claim of cumulative error, we consider the following factors: '(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (quoting *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000)). Casillas was charged with two very serious crimes, the evidence of his culpability was not compelling, and we have determined that the proposed-defense-instruction error warrants reversal.

We further conclude that, collectively, the proposed-defense-instruction error, the physical-injury-instruction error, and the improper-opinion-testimony error deprived Casillas of a fair trial and warrant reversal.

Accordingly, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.[1]

_____ , J.
Pickering

_____ , J.          _____ , J.
Parraguirre                            Saitta


cc:    Hon. Stefany Miley, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[1]Casillas also claimed that the district court erred by failing to conduct a hearing or canvass jurors following two instances of juror misconduct. We have reviewed this claim and conclude that it is without merit.