# IN THE SUPREME COURT OF THE STATE OF NEVADA

WAYNE MICHAEL CAMERON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 83531

FILED

SEP 2 8 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of murder with the use of a deadly weapon. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

Jarrod Faust was shot and killed in his truck in February 2020. There were no witnesses to the crime. But shortly after the shooting, appellant Wayne Cameron admitted to his friend David Colarchik that "I think I just shot someone." Cameron indicated he (Cameron) was "the one that got out of the car and went up to him" and that he shot the victim in a fit of anger.[1] Colarchik reported the conversation to the police, who interviewed Cameron and searched his home and vehicle. In his interview, Cameron initially denied knowledge of the shooting, although he changed his story several times. Detectives found bullet cartridges in Cameron's vehicle that matched a casing recovered at the crime scene. But detectives were unable to find DNA or blood evidence linking Cameron to the crime.

The State charged Cameron with murder with the use of a deadly weapon, advancing alternate theories of premeditation and

---

[1]Cameron told Colarchik that "I hate when people make me mad. I don't know why I get so angry."

22-30460

deliberation and felony murder. As to the felony murder theory, the State charged that Cameron killed Faust "in the perpetration o[r] attempted perpetration of a burglary by entering a vehicle with the intent to commit assault or battery or any felony therein."

At trial, the State presented the forensic evidence, along with other evidence that showed Cameron had been in the area the night of the murder and attempted to cover his tracks following the shooting. Colarchik and others testified to comments Cameron made or actions he took that implicated him in the shooting. A pathologist testified that the gun was fired at an intermediate range, meaning it was discharged within several feet of the body but not right against Faust's face as he sat in the driver's side of his vehicle. Cameron testified in his defense, claiming that he followed Faust because he became concerned when Faust nearly hit a motorcyclist. When Faust stopped his truck, Cameron asked if he was okay, but Faust became angry and confrontational. Faust remained in his truck, but Cameron opened his own door and stood behind it. Cameron testified Faust began swearing and threatening to kill him. Cameron, allegedly believing Faust was holding a gun, retrieved and loaded his own gun, which he fired toward the truck when Faust began to drive at him as if to run him over. Cameron claimed he and Faust thereafter drove off in opposite directions.

Outside the jury's presence, the parties contested whether the prosecutor could argue to the jury that shooting a bullet into the truck constituted an entry for purposes of burglary and, by extension, felony murder. Cameron contended it was improper to allow the State to argue that he was guilty of felony murder-burglary for merely shooting a bullet into the truck. The court overruled the objection, and in closing arguments

the prosecutor advanced this argument to the jury as an alternative basis to find felony murder. Defense counsel again objected, and the State in open court countered, "What? The law says: entry with his hand or entry with an implement. That's the law. The Court approved it. Can't un-approve what the law is, Judge. It comes from the statute." Defense counsel reiterated that burglary "was only putting the gun into the vehicle," objected to all the felony murder instructions, and asked for a mistrial, to which the State responded, "[s]our grapes, Judge. That is what the law says." The court overruled defense counsel's objection and denied the request for a mistrial, stating before the jury that "the Court does not find a legal basis at this time. The prosecution may proceed." The prosecutor thereafter reiterated that the jury could infer a burglary because a bullet entered the truck, arguing, "[w]ould we expect your castle to be less protected from a bullet 10 inches out of your window than a spear driven through it at you? N-o, period."

The jury convicted Cameron of first-degree murder with the use of a deadly weapon and sentenced him to life in prison without the possibility of parole.[2] Cameron appeals, arguing, among other things, the conviction must be reversed because there is no evidence that his gun or body "entered" the truck within the meaning of NRS 193.0145 and that the bullet's entry into the truck did not constitute a burglary. We agree.[3]

We review questions of statutory construction de novo, beginning with the statute's text, and will apply the plain language if it is

---

[2]Cameron was also sentenced to a consecutive term of 8-20 years for the use of a deadly weapon.

[3]In light of our decision, we need not reach Cameron's additional arguments.

unambiguous. *Matter of Aragon*, 136 Nev. 647, 648-49, 476 P.3d 465, 467 (2020); *Castaneda v. State*, 132 Nev. 434, 437, 373 P.3d 108, 110 (2016). We have long strictly construed criminal statutes, *Runion v. State*, 116 Nev. 1041, 1046, 13 P.3d 52, 56 (2000), and the rule of lenity requires us to resolve in the defendant's favor any ambiguity in statutes defining a crime, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 296 (2012); *see also State v. Fourth Judicial Dist. Court (Martinez)*, 137 Nev. 37, 39, 481 P.3d 848, 850 (2021) (addressing the rule of lenity). But in considering whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution. *Hager v. State*, 135 Nev. 246, 256, 447 P.3d 1063, 1070 (2019). Reversal may still be appropriate where the jury is inaccurately instructed on the law and that instruction causes prejudice, *Guidry v. State*, 138 Nev., Adv. Op. 39, 510 P.3d 782, 787 (2022), or where the verdict form does not differentiate between the State's alternate theories and it is not clear the jury would have convicted the defendant of the crime had it been properly instructed, *Nay v. State*, 123 Nev. 326, 334, 167 P.3d 430, 435-36 (2007). But we will not reverse if an error is ultimately harmless. NRS 178.598 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

Murder is the unlawful killing of another human with express or implied malice aforethought. NRS 200.010(1). In relevant part, NRS 200.030(1)(a) defines first-degree murder as a killing that is willful, deliberate, and premeditated. A "willful first-degree murder [under NRS 200.030(1)(a)] requires that the killer actually intend[ed] to kill." *Byford v. State*, 116 Nev. 215, 234, 994 P.2d 700, 713 (2000); *see also Guidry*, 138 Nev., Adv. Op. 39, 510 P.3d at 787-88 (explaining that to find a defendant

guilty of an express-malice killing, the jury must determine the defendant intended to kill).

A murder is also of the first-degree if it is done in the perpetration or attempted perpetration of a burglary. NRS 200.030(1)(b). Our statutes define burglary in part as unlawfully entering a vehicle with intent to commit assault or battery. NRS 205.060(1) (2013); 2013 Nev. Laws ch. 488, § 1 (A.B. 415). But there must be evidence of an entry. *Cf. Barber v. State*, 131 Nev. 1065, 1072, 363 P.3d 459, 464-65 (2015) (reversing a burglary conviction where no evidence established the defendant entered the home). At common law, an entry occurred whenever the airspace within the structure was penetrated, *see Merlino v. State*, 131 Nev. 652, 658, 357 P.3d 379, 383 (Ct. App. 2015), and our statutes define "unlawfully enters" as "to enter or remain" in the structure or vehicle without license or privilege to do so, NRS 205.060(6)(d). Critically, NRS 193.0145 defines "enter" in criminal cases in part as "the entrance of the offender, or the insertion of any part of the body of the offender, or of any instrument or weapon held in the offender's hand and used or intended to be used to threaten or intimidate a person."

We conclude that shooting a bullet into the truck does not constitute an entry for purposes of burglary under NRS 193.0145's plain language. The phrase "held in the offender's hand" requires the offender to be holding the instrument as it enters the structure. To conclude otherwise would expand the scope of burglary so that any time an offender discharged a firearm into a structure, or even threw a rock through a window (or a spear into a castle), such could constitute an entry for purposes of burglary and, potentially, a felony murder. Such an interpretation is not only unsupported by the plain language of the statute, but conflicts with existing

Nevada law that requires evidence of the offender's entry into the structure. *See Barber*, 131 Nev. at 1072, 363 P.3d at 464 (rejecting the argument that evidence of the defendant's presence outside the structure, without more, supports a burglary). Moreover, NRS 202.285(1)(b) already criminalizes discharging a gun into a structure as a category B felony, and it would be improper to construe NRS 193.0145 in a way that could render these statutes in conflict. *See Williams v. State, Dep't of Corr.*, 133 Nev. 594, 601, 402 P.3d 1260, 1265 (2017) (explaining that we read statutes in harmony and that to the extent there is a conflict, the more specific statute will control). The rule of lenity would further compel our conclusion even were NRS 193.0145 ambiguous.[4]

Accordingly, the prosecutor's "bullet-entry" argument at trial was improper and the district court erred by allowing the prosecutor to advance that argument. The error was compounded by the district court's comments when overruling defense counsel's objection in front of the jury, as the district court effectively informed the jury that the bullet-entry theory was legally sound. Nevertheless, the error will not be reversible if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Cortinas v. State*, 124 Nev. 1013, 1027, 195 P.3d 315, 324 (2008) (internal quotations omitted).

Our prior decisions in *Nay* and *Cortinas* are useful in determining whether the error here was harmless. In *Nay*, we determined a similar error warranted reversing a conviction. 123 Nev. at 327-28, 167

---

[4]Although the State fails to raise this point, we acknowledge other courts have concluded that a bullet's entry into a building may support a burglary. *See Whitehead v. State*, 777 So. 2d 781, 837-38 (Ala. Crim. App. 1999); *State v. Decker*, 365 P.3d 954, 957-59 (Ariz. Ct. App. 2016). But we decline to follow these courts for the reasons stated herein.

P.3d at 431. Nay was charged with first-degree murder and robbery after he beat his roommate to death and took some of the victim's belongings. *Id.* Nay admitted to officers that he killed the victim but claimed that he did so in self-defense. *Id.* at 328-29, 167 P.3d at 432. The State charged alternate theories of willful, premeditated murder and felony murder. *See id.* at 334, 167 P.3d at 435-36. The district court instructed the jury that the robbery was a predicate felony for felony murder, but failed to instruct the jury that an afterthought robbery would not support a felony-murder conviction. *Id.* at 334, 167 P.3d at 435. During closing arguments, the prosecutor argued that if Nay committed any robbery, even one after the fact, he was guilty of felony murder. *Id.* We determined that an afterthought robbery could not support a felony-murder conviction, and concluded that in light of the court's instructions and the prosecutor's argument "the jurors had no way of arriving at the conclusion that afterthought robbery cannot provide the predicate . . . for felony murder." *Id.* at 333-34, 167 P.3d at 435-36. And because we could not determine based on the verdict forms on what alternate theory the jury found Nay guilty of first-degree murder, we reversed the conviction. *Id.* at 334-35, 167 P.3d at 436.

Conversely, in *Cortinas*, we determined a similar error was harmless. 124 Nev. at 1016, 195 P.3d at 317. Cortinas killed a woman and dumped her body in the desert. *Id.* at 1017, 195 P.3d at 317. He twice confessed his crime to police, and during an interview he detailed the hour-long killing. *Id.* at 1017-18, 195 P.3d at 317-18. Cortinas also stole some of the victim's belongings, which detectives found in Cortinas's bedroom. *Id.* As in *Nay*, the State charged Cortinas with first-degree murder and robbery, and proceeded on alternative theories of a willful, deliberate, and premeditated murder and felony murder predicated on the robbery. *Id.* at

1018, 195 P.3d at 318. The jury instructions and prosecutor's closing argument indicated the jury could return a first-degree murder conviction based on felony murder even if the robbery occurred as an afterthought. *Id.* The jury returned a general verdict finding the defendant guilty of first-degree murder. *Id.* We concluded there was instructional error but that the error was harmless beyond a reasonable doubt where Cortinas twice confessed to the killing and his confession clearly showed the murder had been willful, deliberate, and premeditated. *Id.* at 1027-29, 195 P.3d at 325-26. We also distinguished Cortinas's case from Nay's in that Cortinas did not attempt to minimize his responsibility or claim self-defense. *Id.* at 1029, 195 P.3d at 326.

We conclude this case is more like *Nay* than *Cortinas*. In those cases, as here, it was clear that the defendant killed the victim, but here, as in *Nay*, the defendant minimized his responsibility and claimed self-defense. Moreover, there was limited evidence of the predicate malice for a willful and deliberate murder, and Cameron's story, had it been believed, would have warranted a conviction for something less than first-degree murder. And although it is possible that Cameron committed a burglary, there is no evidence here that Cameron actually put his hand or his gun into the truck, and the prosecutor's bullet-entry argument closed that gap in the State's evidence, enabling, and perhaps even compelling, the jurors to find first-degree felony-murder based on a predicate burglary even if the jurors would have otherwise determined the State failed to prove an entry.[5]

---

[5]The information lists attempted burglary as potentially supporting the alternate felony-murder theory of first degree murder. However, the record demonstrates the prosecutor abandoned that argument during closing arguments. Moreover, the facts state that Cameron committed the

SUPREME COURT
OF
NEVADA

(O) 1947A

These facts are in sharp contrast to *Cortinas* where the evidence overwhelmingly supported the predicate malice for a willful and deliberate murder and where detectives found clear evidence of the robbery. 124 Nev. at 1029, 1031, 195 P.3d at 326-27. And because we cannot discern whether the jury convicted Cameron on the felony-murder theory or the willful-murder theory because a general verdict form was utilized, we cannot determine beyond a reasonable doubt that the jury would have convicted Cameron of first-degree murder had it been properly instructed. We therefore conclude the error here is reversible.

Accordingly, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Silver

_____, J.
Cadish

---

burglary "by entering a vehicle." Because the defendant has a constitutional right to be informed in the charging document of the facts constituting the charge, the failure to allege facts of the attempt here may have prevented the State from arguing attempted burglary at trial. *See Barlow v. State*, 138 Nev., Adv. Op. 25, 507 P.3d 1185, 1193-94 (2022) (explaining, in the context of addressing aggravating circumstances in a notice seeking the death penalty, that defendants "should not have to gather facts to deduce the State's theory" and "the supporting facts must be stated directly in the notice itself"); *Simpson v. Eighth Judicial Dist. Court*, 88 Nev. 654, 659, 503 P.2d 1225, 1229 (1972) (explaining that it is a constitutional violation to put a defendant on trial without providing, in the information, the facts underlying the charge).

PICKERING, J., dissenting:

After watching Jarrod Faust's lifted pickup truck narrowly miss colliding with a motorcycle, Wayne Cameron began following Faust in his own vehicle. Cameron tailed Faust for several minutes, through multiple stops and turns, until Faust pulled over in a cul-de-sac. Cameron pulled over to the right side of Faust in the cul-de-sac, with their vehicles facing the same direction.[6] Cameron then initiated a confrontation with Faust regarding his driving, which escalated from "angry, weird words" to Cameron brandishing and firing his gun through Faust's open driver-side window. After responding to calls from residents of the cul-de-sac, police discovered Faust slumped lifeless over his steering wheel, unarmed. Cameron's friend led police to Cameron's door, telling police that Cameron admitted he had "shot someone"—Faust—because he was "so angry."

The State offered alternative theories of first-degree murder against Cameron for his killing Faust—under NRS 200.030(1)(a) as a willful, premeditated, and deliberate murder or (1)(b) as felony murder, committed during the perpetration of burglary or attempted burglary of a vehicle (felony murder/burglary). The majority questions the propriety of the latter theory. And because the jury convicted Cameron of first-degree murder via a general verdict form, the majority frames its review in the constitutional terms of alternative-theory instructional error, which is in

---

[6]There was differing testimony regarding the positioning of the vehicles, among other facts. But given Cameron's jury conviction, on appeal we view these discrepancies in a light most favorable to the State. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

play when a jury receives instructions on multiple theories of a crime, and one of those instructions is legally incorrect. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (discussing standard of review for alternative-theory error). In such instances, a general verdict must be reversed unless there can be no reasonable doubt that the instructional error was harmless. *See Cortinas v. State*, 124 Nev. 1013, 1028, 195 P.3d 315, 325 (2008).

But Cameron's briefing on appeal is not as crystalline in characterizing the basis for his challenge to his conviction. Cameron does not point to any error with the felony murder/burglary instructions as given, and which are pulled from Nevada's murder and burglary statutes themselves. Instead, Cameron essentially argues that the State failed to prove up his requisite "entry" under NRS 193.0145. This distinction is more than academic: If we take Cameron's challenge as being to the sufficiency of evidence of his "entry," rather than to an alleged error in substantive alternative-theory instructions, our review is significantly more deferential. In the latter case, Cameron's conviction by general guilty verdict would stand if any rational trier of fact could have found the essential elements of any one of the possible bases of conviction beyond a reasonable doubt. *Gordon v. State*, 121 Nev. 504, 507, 117 P.3d 214, 216 (2005).

A rational juror could have convicted Cameron of a willful, premeditated, and deliberate murder. Because of evidence regarding the positioning of the vehicles—side-by-side and facing the same direction—and the stippling marks around Faust's gunshot wound, a juror could have determined that Cameron loaded his weapon, then made his way around to the driver-side of Faust's vehicle to shoot him at a relatively close range, giving Cameron time "to think upon or consider the act, and then determine to do it." *Curtis v. State*, 93 Nev. 504, 507, 568 P.2d 583, 585 (1977) (quoting

*Payne v. State*, 81 Nev. 503, 509, 406 P.2d 922, 925-26 (1965)) (describing what meets elements of premeditation and deliberation). Or a rational juror could have found that the State proved felony murder/burglary based on an entry by established measure—the stippling surrounding Faust's gunshot wound indicates that Cameron fired his weapon within a few feet of Faust; the bullet's downward trajectory from Faust's left cheekbone to right spinal column likewise could evince Cameron's close proximity to Faust, who was elevated in his lifted pickup truck at the time of the killing; and Faust's driver's-side window was down and unbroken when police found him. All this could support that Cameron's hand and/or weapon penetrated Faust's vehicle's airspace before or as he fired.

Even accepting the majority's position that Nevada law forecloses an entry-by-projectile theory of burglary, these alternate paths to conviction instruct that we affirm under *Gordon*. And if we instead characterize Cameron's challenge as *Cortinas*-style instructional error, then we must grapple with Cameron's failure to adequately raise any potential entry-by-projectile instructional error on appeal. The potential application of this theory under Nevada law is an interesting question with a storied answer, *see United States v. Brown*, 957 F.3d 679, 687 (6th Cir. 2020) (noting "that Blackstone defined an entry as sufficient for burglary if the entry was 'with an instrument *held in the hand*' (like a firearm reaching through a window)" and recognizing as a disputed question, "Should a bullet shot from *outside* a home qualify as an entry even though the bullet is not in the 'hand' when it enters?"), *cert. denied*, ___ U.S. ___, 141 S. Ct. 1286 (2021). *Compare* 1 Edward Hyde East, *A Treatise of the Pleas of the Crown* § 7, at 490 (1806) (recognizing disagreement among early authorities regarding whether a projectile bullet could constitute entry), *with* 1 Sir

Matthew Hale, *The History of the Pleas of the Crown*, 554-55 (1st Am. ed. 1847) ("But if he shoots without the window, and the bullet comes in, this seems to be no entry to make burglary; *quære*."), but one teed up by the majority rather than the parties.

Cameron focuses instead on an entirely separate clause of NRS 193.0145, arguing that he did not enter because he did not use his weapon "to threaten or intimidate a person." In sum, the argument Cameron *actually makes* is that he could not have burgled Faust because he either shot to kill Faust (rather than threaten or intimidate him) or blindly in Faust's direction in imperfect self-defense; but this is just a variation on a merger rule argument, which this court has already rejected in the felony murder/burglary context. *State v. Contreras*, 118 Nev. 332, 46 P.3d 661 (2002). In any case, it does not land—Cameron's intent to threaten or intimidate Faust is supported by his brandishing and firing a gun in Faust's direction and his admission that he "[a]bsolutely" wanted to scare Faust. *Larsen v. State*, 86 Nev. 451, 454, 470 P.2d 417, 418-19 (1970) (reasoning under Nevada's burglary statute that "the jury could certainly infer that the man at the door of the motel intended to enter unlawfully and that the simulation of a gun, coupled with the words he would shoot if the door was not opened, strongly inferred an intent to commit larceny had he gained the entrance he sought").

In sum, the only error in play (that Nevada law forecloses a theory of entry-by-projectile) is one the majority raises, not the parties. If this court still thinks this is the proper vehicle for considering the merits of the theory, supplemental briefing is required, both on that point and as to whether the parties challenge the jury instructions themselves or the evidence supporting Cameron's conviction. Absent such clarification and

given Cameron's waiver of the theoretical entry-by-projectile instructional error, I would decide only what is clearly presented. And sufficient evidence supports Cameron's first-degree murder conviction, either as felony murder/burglary, which a juror could find Cameron committed by entering Faust's vehicle with his hand or gun, or because Cameron killed Faust willfully, with premeditation and deliberation. Accordingly, I dissent.

_____, J.
Pickering

cc: Hon. Barry L. Breslow, District Judge
Richard F. Cornell
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk